501 P.2d 949

**The GOOD SAMARITAN HOSPITAL, INC.,
an Arizona corporation, Appellant,**

**v.**

**STATE of Arizona ex rel. MARICOPA
COUNTY, Maricopa County Board
of Supervisors, Appellees.**

**No. 1 CA-CIV 1787.**

Court of Appeals of Arizona,
Division 1,
Department B.

Oct. 12, 1972.

Filler, Paytas, Shannon, Fleming & Stephenson, P.C. by Mathew E. Shannon, Phoenix, for appellant.

Moise E. Berger, Maricopa County Atty., by John R. Sticht and Richard L. Sallquist, Deputy County Attys., Phoenix, for appellees.

HAIRE, Chief Judge, Division 1.

The question presented on this appeal is whether the appellant private hospital (The Good Samaritan Hospital, Inc.) is entitled to reimbursement from the County of Maricopa for emergency hospital services furnished to an escapee from the Arizona State Hospital. The trial court entered summary judgment in favor of the county and against the private hospital, based upon a record which showed that there were no disputed issues of fact.

On October 21, 1968, Timothy George (hereinafter "patient") was found to be mentally ill by the Superior Court of Maricopa County, declared incompetent, and committed to the Arizona State Hospital until sufficiently restored to reason or otherwise discharged according to law.

He escaped from the State Hospital on December 4, 1968, and on December 6, 1968, was struck by an automobile and admitted to the private hospital in critical condition for emergency care. There is no dispute that the patient was an "indigent" within the normally accepted use of that term, or that, in the absence of his prior (and continuing) commitment to the State Hospital, the county would have been liable to reimburse the private hospital for all, or at least substantially all of the claim here involved.

The obligation of the county to provide for the hospitalization and medical care of the indigent sick arises out of statutory provisions to that effect.[1] Likewise,

1. A.R.S. § 11–291 provides:
"Hospitalization and medical care of indigent sick

The board of supervisors has the sole and exclusive authority to provide for the hospitalization and medical care of the indigent sick in the county." (Emphasis added).

the obligation of the county to reimburse a private hospital for emergency services rendered to the indigent sick arises out of statute.[2] By the terms of the statute the obligation to reimburse is limited to emergency services rendered to "a patient qualified for such care and treatment under this article." Looking to other statutory provisions in the same article we find the qualifications which generally govern the right to receive hospitalization and medical care at county expense in A.R.S. § 11–297, subsec. A as follows:

". . . [N]o person shall be provided hospitalization, medical care or outpatient relief under the provisions of this article without first filing with a member of the board of supervisors of the county in which he resides a statement in writing, subscribed and sworn to under oath, that he is an indigent as shall be defined by rules and regulations of the state welfare department, *an unemployable totally dependent upon the state or county government for financial support,* or an employable of sworn low income without sufficient funds to provide himself necessary hospitalization

and medical care, and that he has been a resident of the county for the preceding twelve months." (Emphasis added).[3]

From the foregoing statutory provisions it is readily apparent that reimbursement is required only where the county would have been initially responsible for furnishing medical care at county expense, and the emergency does not enlarge the county's obligation, but merely justifies treatment in some other hospital subject to reimbursement.

▉ Here the appellant private hospital contends that the patient is "an unemployable totally dependent upon the state or county government for financial support" within the meaning of § 11–297, subsec. A, and thus is a person qualified for care and treatment at county expense so as to make the reimbursement provisions of § 11–297.-01, subsec. B applicable. Taken literally, and without reference to other statutory provisions, appellant's contention appears to have merit. However, the county contends that A.R.S. § 36–202 carves out an exception to the county's general responsibility for the care of the indigent sick.[4]

2. A.R.S. § 11–297.01, subsec. B, enacted in 1968, provides:
"B. The county shall be liable for payment of all costs retroactive to the inception of treatment incurred by a private hospital or hospital operated by a university arising from emergency treatment and medical care administered at such hospital *for a patient qualified for such care and treatment under the provisions of this article:*
"1. When the emergent condition of the patient is such that it is deemed medically inadvisable to transport the patient from the private hospital or hospital operated by a university for further treatment.
"2. When the county does not move the patient from the private hospital or hospital operated by a university within twelve hours after being notified by the private hospital or hospital operated by a university authorities of the location and condition of the patient." (Emphasis added).

3. Provision is made for emergency care in the County Hospital without the necessity of "first filing" such a state-

ment. However, in our opinion such exception was intended to expedite the admission of emergency cases, and was not intended to require treatment *at county expense* of all emergency cases without regard to a subsequent determination of indigency or non-indigency.

4. A.R.S. § 36–202 provides:
"A. A state hospital for the mentally ill shall be maintained for care and treatment of persons adjudged mentally ill and other mentally diseased persons who are admitted thereto in accordance with law. The hospital shall be called the Arizona state hospital.
"B. The hospital shall have adequate facilities and equipment for enlightened and scientific treatment of nervous and mental diseases in accordance with approved methods of mental therapeutics. Such facilities shall include, among other things:
"1. *Facilities for medical and psychiatric treatment,* with special attention to sedative and tonic hydro-therapy, insulin, occupational therapy and other special therapies.

**324**

We agree. As we have previously pointed out, the emergency reimbursement provisions of § 11–297.01, subsec. B do not enlarge the right to have medical care at county expense, but rather only create a method whereby private hospitals may be reimbursed by the county for services which the county was obligated to furnish, and presumably would have furnished, but for the emergency. Here, the patient was a ward of the state, and the State Hospital unquestionably would ordinarily be responsible for his medical care and treatment at the expense of the state.[5] At the time of the accident, the patient was still legally committed to the State Hospital and subject to the provisions of § 36–202. The fact of escape is immaterial—if appellant's interpretation of the statute were adopted, the cost of medical care for all state hospital patients would become a county expense regardless of whether the problem were to arise on or off state hospital grounds or be of an emergency or non-emergency nature. We do not believe that such was intended by the legislature. As a matter of social policy, it is perhaps unfortunate for appellant that the legislature has restricted the reimbursement provision of § 11–297.01 to county obligations, but the fact still remains that appellant is not entitled to reimbursement in the absence of statutory provision therefor, and under the statute here involved, the county is not required to reimburse appellant for medical expenses for which the county itself would not have been initially responsible.

The judgment of the trial court is affirmed.

EUBANK and JACOBSON, JJ., concur.

"2. Facilities for proper segregation and care of child patients.
"3. Facilities for recreation and physical training.
"4. An institutional library for the use of patients.
"5. A properly equipped dental department.
"6. A properly equipped laboratory and X-ray department." (Emphasis added).

5. The deposition of the State Hospital Comptroller indicates that much of the medical care required for state hospital patients is rendered through the facilities and personnel of the state hospital. However, most of the major medical requirements are met through advance contracting with private hospitals.