537 P.2d 1329

Saul GUERRERO and Maria de Lourdes Guerrero, minors, by their guardian ad litem, Teodoro Guerrero, Appellants,

v.

COPPER QUEEN HOSPITAL, a division of Phelps Dodge Corporation, a New York Corporation, et al., Appellees.

No. 11958–PR.

Supreme Court of Arizona,

En Banc.

July 18, 1975.

Ramon R. Alvarez and Arthur C. Atonna, Douglas, for appellants.

Evans, Kitchel & Jenckes, P. C. by Leon D. Bess and David L. Beaugureau, Phoenix, for appellees.

HAYS, Justice.

Saul and Maria de Lourdes Guerrero, minors, appealed by their guardian ad litem, Teodoro Guerrero, to the court of appeals from a superior court judgment dismissing their complaint for failure to state a claim for which relief could be granted. The complaint was filed to recover damages for aggravated injury and suffering allegedly arising from the failure of the personnel of the Copper Queen Hospital to render emergency aid to the children. They were burned when a stove in their home in Naco, Sonora, Mexico, exploded. The Copper Queen Hospital is a private hospital located in Bisbee, Arizona, and a division of the Phelps Dodge Corporation, incorporated in New York. The court of appeals reversed the decision of the superior court and denied a subsequent motion for rehearing. We accepted the petition for review. The opinion of the court of appeals is vacated. Guerrero v. Copper Queen Hospital, 22 Ariz.App. 611, 529 P.2d 1205 (1974); *reh. denied,* 23 Ariz.App. 172, 531 P.2d 548 (1975).

The issue before us is whether a privately owned hospital is under a duty to provide emergency care to *all* persons presenting themselves for such aid, including nonresident aliens who enter the country solely for the purpose of treatment.

The appellants concede that the Copper Queen Hospital is a private institution and that, as a general rule, a private hospital is under no obligation to accept any individual who applies as a patient. They argue that a private hospital is under no legal duty to maintain an emergency ward, but, if a hospital does maintain such a ward for the public, it must provide the service when a situation exists which reasonably could be termed an emergency. Appellants urge us to follow the opinion of the Supreme Court of Delaware in Wilmington General Hospital v. Manlove, 54 Del. 10, 174 A.2d 135 (1961):

".  .  .· If a person, seriously hurt, applies for such aid at an emergency ward, relying on the established custom to render it, is it still the right of the hospital to turn him away without any reason? In such a case, it seems to us, such a refusal might well result in worsening the condition of the injured person, because of the time lost in a useless attempt to obtain medical aid.

"Such a set of circumstances is analogous to the case of the negligent termination of gratuitous services, which creates a tort liability. Restatement [second], Law of Torts, 'Negligence,' § 323." 174 A.2d at 139.

The appellees argue that the *Manlove* case sets forth a minority rule which is contrary to the common-law rule that a

private hospital is under no duty to accept a patient. For cases supporting the common-law rule and those supporting the minority rule see 35 A.L.R.3rd 841 et seq. The reliance by the parties on either rule is misplaced. A private hospital has no duty to accept a patient or serve everyone unless a different public policy has been declared by statute or otherwise. 40 Am. Jur.2d *Hospitals and Asylums* § 12.

The character of private hospitals in Arizona has been changed by statute and regulations. Private hospitals must be licensed to operate in this state. For the year in question the applicable statute was A.R.S. § 36–407, but for a number of years prior to 1972, former statutes required that a corporation obtain a license to conduct a hospital.

To implement the purposes of the statutes, authority was given to the state department of health, and later to the state board of health, to adopt rules and regulations governing the licensing of hospitals. A.R.S. § 36–405. Among the purposes of the regulations was to "provide minimum requirements of such institutions (hospitals) for types and extent of services to be provided . . . ." A.R.S. § 36–405(A).

Since 1964 the regulations of the state health department have required a General Hospital to maintain emergency room services.[1] In the revision of the rules in 1972 the same requirement for providing facilities for emergency care was continued and expanded.[2]

■ From the statutes and regulations it appears clear that the public policy of this state is that a General Hospital must maintain facilities to provide emergency care. From this policy we conclude that such a hospital may not deny emergency care to any patient without cause.

■ The actual facts in this case are unknown because the action was dismissed at the complaint stage. The appellee hospital is referred to simply as a hospital. There is no specific allegation of its class as a General or Special Hospital. These are matters which can be developed in the case. For pleading purposes the allegation is sufficient to put the opposing party on notice of the nature and type of institution in question.

■ The appellees argue that A.R.S. § 32–1471 concerning individuals gratuitously rendering emergency care relieves such persons of liability for civil or other damages unless they are guilty of gross negligence. The apparent purpose of this statute is to relieve the burden of liability on individuals who choose to or not to render aid to others in emergency situations. We are not dealing with the same problem in this instance. An individual may in good faith help another in a crisis with untoward results for which he should not be penalized or the same person may not help, perhaps knowing that he lacks the necessary expertise to be of aid. The medical expertise of a hospital staff is assumed. The statute is not applicable to emergency medical treatment in a hospital.

■ The appellees have raised other contentions concerning the wording of the claim for relief. In testing a complaint for a failure to state a claim, the question is whether enough is stated which would entitle the plaintiff to relief upon some theory to be developed at trial. The purpose of the rule is to avoid technicalities and give the other party notice of the basis

1. Rules and Regulations for the Licensing of Hospitals, Reg. 4–2–1.1, Adopted June 19, 1964.

2. Rules and Regulations for the Licensing of Hospitals, Adopted January 20, 1972:
   Reg. 4–2–6.8 Emergency Departments
   "A. General Hospitals shall provide facilities for emergency care. Such facilities shall set aside an area on grade, accessible to an entrance to the hospital. This emergency treatment area shall have available at least infusion sets, resuscitation equipment, oxygen and necessary equipment and supplies for the treatment of emergency cases."
   Reg. 4–2–6.10 Other
   "D. There shall be provisions for emergency treatment of outpatients."

for the claim and its general nature. Mackey v. Spangler, 81 Ariz. 113, 301 P.2d 1026 (1956).

■ The Guerreros stated their claim in terms of reliance on a custom by the hospital in providing emergency service. Statutes and regulations are the actual basis for the requirement to provide emergency services, and, while not technically correct, the pleading should not have been dismissed with prejudice. A basis for the claim was stated and appellants should be granted leave to amend the complaint.

■ One last point requires comment. The appellants are not residents of this state or county. Are they precluded from the benefits of the Arizona statutes and regulation on hospitals? We think not. The statutes are remedial, and there is no exception or limitation stated in them. We will not read an exception into them. The proximity of the appellee hospital to the international border presents special problems to it and other hospitals similarly situated. The lack of modern medical facilities in the Mexican border cities is the primary factor. Despite this obvious condition, we decline to find an exception in the statutes; this condition was equally obvious to the legislators, and they chose not to make an exception in the law.

Remanded for proceedings not inconsistent with the above opinion.

CAMERON, C. J., and LOCKWOOD and HOLOHAN, JJ., concur.

STRUCKMEYER, Vice Chief Justice (concurring in the result).

I concur with the opinion of Justice Hays insofar as it is concluded that it was error for the trial court to dismiss the defendant's first amended complaint. However, I express reservations as to the reasons assigned for the reversal.

For the purpose of the decision at this stage of the proceedings, I accept the allegations of the complaint as true; first, that the Phelps Dodge Corporation, a New York corporation, operates and maintains the private hospital known as the Copper Queen Hospital in Bisbee, Arizona; second, that the emergency facilities of the Copper Queen Hospital were for the use and benefit of any individual seriously injured who required emergency care; and, third, that it was the practice of the Copper Queen Hospital to render emergency care to any member of the public who was seriously injured.

I approve of the statement in Wilmington General Hospital v. Manlove, 54 Del. 10, 174 A.2d 135 (1961), cited *supra:*

". . . that liability on the part of a hospital may be predicated on the refusal of service to a patient in case of an unmistakable emergency, if the patient has relied upon a well-established custom of the hospital to render aid in such a case." 174 A.2d at 140.

I have reservations as to that part of the opinion which predicates the decision on statutes of this State and the regulations of the State Health Department. This point was not raised in the lower court, was not the basis for decision there, nor was it briefed or argued here.

I express doubts as to whether constitutionally the State may impose the burden of emergency care to the general public upon a private corporation. I do not join in that portion of Justice Hays' opinion holding the Phelps Dodge Corporation is obligated by law and administrative fiat to give emergency care to the general public, believing that question should await the time when it is directly presented for decision.

For this reason I concur in the result only.