591 P.2d 1305

**STATE of Arizona, Appellee,**

v.

**Steven Ronald SCHONER and Steven Greg Twitchell, Appellants.**

· **No. 1 CA–CR 3105.**

Court of Appeals of Arizona,
Division 1,
Department A.

Feb. 27, 1979.

John A. LaSota, Jr., Former Arizona Atty. Gen., Robert K. Corbin, Arizona Atty. Gen. by William J. Schafer, III, Chief Counsel, Criminal Division, Asst. Atty. Gen., Phoenix, Fred W. Croxen, II, Flagstaff City Atty. by Joseph R. Bertoldo, Asst. City Atty., Mangum, Wall, Stoops & Warden by Robert W. Warden, Flagstaff, for appellee.

Aspey, Watkins & Diesel by Frederick M. Aspey, Flagstaff, for appellants.

OPINION

DONOFRIO, Judge.

Appellants, Steven Ronald Schoner and Steven Greg Twitchell, challenged the constitutionality of A.R.S. § 13–374 as impinging upon their First Amendment rights, and on these grounds seek to have their convictions for willful disturbance of a public school or school meeting set aside. The statute reads:

"A person who wilfully disturbs a public school or school meeting is guilty of a misdemeanor punishable by a fine of not less than fifty nor more than one hundred dollars, or by imprisonment in the county jail for not to exceed three months."

The facts pertinent to this appeal are as follows. Appellants are members of the Victory Chapel in Flagstaff, Arizona. Victory Chapel is a fundamentalist church that has been active in spreading its message in the Flagstaff area. On March 1, 1977, appellants went to Flagstaff High School during the lunch hour and, using a loudspeaker system, began broadcasting their message on the sidewalk across from, and in the direction of, the high school. Mr. Morales, the acting principal of the high school, believing appellants' broadcasting was disrupting normal and orderly school activities, called the Flagstaff police. The police issued citations to both appellants for willful disturbance of a public school or school meeting in violation of A.R.S. § 13–374. On November 8, 1977, following a trial to the court, appellants were found guilty and were given suspended fines of $56.00. This appeal followed.

Appellants claim in this appeal that, on its face, A.R.S. § 13–374 is both vague and overbroad, and therefore unconstitutional. We conclude, however, that the statute suffers from neither of these related infirmities.

### A. Vagueness

■ It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. *Grayned v. City of Rockford,* 408 U.S. 104,

92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). In *Grayned v. City of Rockford, supra,* the United States Supreme Court stated the reasons for this principle as follows:

"Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute 'abut[s] upon sensitive areas of basic First Amendment freedoms,' it 'operates to inhibit the exercise of [those] freedoms.' Uncertain meanings inevitably lead citizens to 'steer far wider of the unlawful zone' * * * than if the boundaries of the forbidden areas were clearly marked." 408 U.S. at 108–9, 92 S.Ct. at 2298–9, 33 L.Ed.2d at 227–8.

■ In considering the contention that A.R.S. § 13–374 is impermissibly vague, we first look to general statutory construction guidelines. The general rule in Arizona is that the court is under a duty to give statutes operation and effect, if any reasonable construction will so permit, and to avoid a construction which would render the statute meaningless or of no effect. *City of Phoenix v. Superior Court,* 101 Ariz. 265, 419 P.2d 49 (1966); *State v. Clifton Lodge No. 1174, Ben. & Pro. Ord. of Elks,* 20 Ariz.App. 512, 514 P.2d 265 (1973). There is a presumption in favor of the constitutional validity of a legislative enactment. *State v. Sanner Contracting Co.,* 109 Ariz. 522, 514 P.2d 443 (1973). In interpreting a statute, the court should give it a sensible construction which will accomplish legislative intent and purpose. *State Ex. Rel. Flournoy v.*

*Mangum,* 113 Ariz. 151, 548 P.2d 1148 (1976). To arrive at legislative intent, the court looks to the words, context, subject matter, effects and consequences, reason and spirit of the law. *Arnold Const. Co., Inc. v. Arizona Board of Regents,* 109 Ariz. 495, 512 P.2d 1229 (1973). In determining the intent of the Legislature, the words of the statute are to be given their ordinary meaning, unless it appears from the context that a different meaning should control. *State v. Raffaele,* 113 Ariz. 259, 550 P.2d 1060 (1976).

■ With these rules of construction in mind, we find no unconstitutional vagueness in A.R.S. § 13–374, but rather we conclude that the statute provides persons of ordinary intelligence adequate notice of the conduct which it proscribes. The critical words in the statute are "wilfully disturbs a public school or school meeting."

■ In both common and legal usage, the terms "public school" and "school meeting" means institution consisting of buildings, grounds and classrooms maintained by local governmental authorities for the use of all residents of a given town or district, or an assembly of persons connected therewith, which consists of pupils, teachers or administrators gathered together for instructional or educational activities. Webster's Third New International Dictionary (unabridged edition, 1969); *Benvenue Parent-Teacher Association v. Nash County Board of Education,* 4 N.C.App. 617, 167 S.E.2d 538, 540–1 (1969); *Crist v. Bishop,* 520 P.2d 196, 198 (Utah, 1974). By employing terms easily apprehended by ordinary persons, the Arizona Legislature narrowly and clearly limited the kind of place in which the proscribed conduct is prohibited.

■ Furthermore, we believe A.R.S. § 13–374 sufficiently defines and specifies the conduct proscribed. Both common and legal dictionaries define the term "disturb" to mean to throw into commotion or disorder, to agitate a settled state of things, or to throw out of course of order. Webster's Third New International Dictionary (unabridged edition, 1969); Black's Law Dictionary (fourth edition, 1968). To the same effect are: *State v. McNair,* 178 Neb. 763,

135 N.W.2d 463, 465 (1965); *State v. Wiggins*, 272 N.C. 147, 158 S.E.2d 37, 42 (1967); *City of Clovis v. Archie*, 60 N.M. 239, 290 P.2d 1075 (1955). The word "wilfully" clearly denotes a deliberate disturbance.

■ Although the prohibited quantum of disturbance is not specified in A.R.S. § 13–374, we think that it is apparent from the context in which the word "disturb" is used that the measure is whether normal school activities or meetings have been materially or substantially disrupted. The plain import of A.R.S. § 13–374 is that the Legislature intended to provide protection for the normal and orderly operations of public schools and school meetings from deliberate interference and interruption. A.R.S. § 13–374 is not a vague, general "breach of the peace" statute, but a statute written specifically to the school context, where the prohibited disturbances are easily measured by their impact upon the normal activities of the school. See, *Grayned v. City of Rockford*, 408 U.S. at 112, 92 S.Ct. at 2301, 33 L.Ed.2d at 230. We conclude that the words "wilfully disturbs," when used in conjunction with "public school and school meeting," connote to a person of ordinary intelligence a deliberate, material or substantial interference with, disruption of, or confusion of, the normal operation of a public school or school meeting.

■ In view of this reasonable construction of A.R.S. § 13–374, it is apparent that the statute does not permit punishment for the expression of an unpopular point of view, and that it contains no invitation to subjective or discriminatory enforcement. A.R.S. § 13–374 requires that there be demonstrated interference with school activities. It is true that enforcement requires the exercise of some degree of police judgment, but, as confined, that degree of judgment here is permissible. See, *Grayned v. City of Rockford*, 408 U.S. at 114, 92 S.Ct. at 2302, 33 L.Ed.2d at 231. Thus, we hold that A.R.S. § 13–374 is not impermissibly vague.

### B. Overbreadth

■ A clear and precise enactment nevertheless may be "overbroad" if in its reach it prohibits constitutionally protected conduct. *Zwickler v. Koota*, 389 U.S. 241, 249–250, 88 S.Ct. 391, 396–397, 19 L.Ed.2d 444, 450–51 (1967). Although appellants do not claim that, as applied to them, A.R.S. § 13–374 has punished protected expressive activity, they claim that the statute is overbroad on its face. Specifically, appellants contend that the statute is overbroad because it unduly restricts their constitutionally protected rights of free speech, peaceable assembly and free exercise of religion. The crucial question is whether the statute sweeps within its prohibitions what may not be punished under the First and Fourteenth Amendments to the United States Constitution. *Grayned v. City of Rockford*, 408 U.S. at 114, 92 S.Ct. at 2302, 33 L.Ed.2d at 231.

The United States Supreme Court has held that expressive activity ceases to be constitutionally protected, and may be prohibited, if it materially interferes with, or substantially disrupts, the normal operation of schools, school activities or the rights of other persons. *Tinker v. Des Moines Independent Com. Sch. Dist.*, 393 U.S. 503, 513, 89 S.Ct. 733, 740, 21 L.Ed.2d 731, 740–1 (1969); *Grayned v. City of Rockford*, 408 U.S. at 118, 92 S.Ct. at 2304, 33 L.Ed.2d 233. In *Healy v. James*, 408 U.S. 169, 189, 92 S.Ct. 2338, 2350, 33 L.Ed.2d 266, 284 (1972). The Court elaborated upon this rule as follows:

"In the context of the 'special characteristics of the school environment,' the power of the government to prohibit 'lawless action' is not limited to acts criminal in nature. Also prohibited are actions which 'materially and substantially disrupt work and discipline of the school.' *Tinker v. Des Moines Independent School District*, 393 U.S., at 513, [89 S.Ct., at 740] 21 L.Ed.2d at 741. Associational activities need not be tolerated where they infringe reasonable campus rules, interrupt classes or substantially interfere with the opportunity of other students to obtain an education."

■ In light of the above, and in view of our foregoing interpretation of A.R.S. § 13–374, we conclude that the statute does

not restrict or prohibit constitutionally protected expressive activity, and therefore is not facially overbroad. A.R.S. § 13–374 goes no further than *Tinker* and its progeny say a state may go to prevent interference with its schools. A.R.S. § 13–374 is narrowly tailored to further the State's compelling interest in having undisrupted school sessions and other school activities conducive and necessary to the educational process, and does not unnecessarily interfere with First Amendment rights. Far from being an impermissibly broad prophylactic statute, A.R.S. § 13–374 punishes only deliberate conduct which materially or substantially disrupts normal public school operations and meetings. Peaceful picketing which does not interfere with the ordinary functioning of the school is permitted. The statute gives no license to punish anyone because of what he is saying. *Grayned v. City of Rockford*, 408 U.S. at 119–120, 92 S.Ct. at 2305, 33 L.Ed.2d at 234.

On the basis of the foregoing, we hold that A.R.S. § 13–374 is not unconstitutionally vague or overbroad. We therefore affirm the judgments and sentences of the trial court.

FROEB and HAIRE, JJ., concur.