635 P.2d 527

ST. JOSEPH'S HOSPITAL AND MEDICAL CENTER, an Arizona Corporation, Plaintiff-Appellee Cross-Appellant,

v.

MARICOPA COUNTY, Arizona, a body politic, Defendant-Appellant Cross-Appellee.

No. 1 CA–CIV 5034.

Court of Appeals of Arizona, Division 1, Department B.

Sept. 24, 1981.

Jennings, Strouss & Salmon by Richard B. Burnham, Jefferson L. Lankford, Phoenix, for plaintiff-appellee cross-appellant.

Charles F. Hyder, former Maricopa County Atty. by Gordon J. Goodnow, Jr., Deputy County Atty., Phoenix, for defendant-appellant cross-appellee.

Stephen D. Neely, Pima County Atty. by Howard Baldwin, Deputy County Atty., Tucson, for amicus curiae Pima County, Ariz.

Lewis & Roca by Roger W. Kaufman, Terrence M. Slaven, Phoenix, for amicus curiae Arizona Hospital Association.

## OPINION

O'CONNOR, Judge.

The appeals in this action are from a summary judgment entered by the trial court in favor of St. Joseph's Hospital and Medical Center (St. Joseph's) and against Maricopa County, for the sum of $8,390.45, plus interest and costs, reimbursing St. Joseph's for certain emergency medical treatment rendered by St. Joseph's to a patient pursuant to A.R.S. § 11–297.01.

The patient, Benjamin E. McLain, was injured in an automobile accident in Gila Bend, Arizona, on November 1, 1976. He was taken by ambulance to Maryvale Samaritan Hospital, which transferred him to St. Joseph's the same day. McLain had suffered a spinal fracture, head injuries, and was not fully conscious. On November 22, 1976, St. Joseph's first notified Maricopa County General Hospital that McLain was an indigent patient and that he should be moved. McLain was then transferred to Maricopa County General Hospital on November 23, 1976, within twelve hours after the notification. McLain did not regain consciousness until sometime thereafter.

St. Joseph's filed suit to obtain reimbursement from Maricopa County, pursuant to A.R.S. § 11–297.01, for McLain's care from November 1, 1976, up to and including November 22, 1976. Reimbursement was sought at the rate normally charged non-indigent patients. Cross-motions for summary judgment were filed. The trial court granted St. Joseph's motion for summary judgment at the full billed rate of care, less $2,476.00, the portion of the bill incurred which, when offset against McLain's previous year's income, reduced his income to the indigency eligibility limit of $2,100.00. Timely appeals were filed from this judgment by both Maricopa County and St. Joseph's.

The first issue raised in Maricopa County's appeal is one of statutory construction. Maricopa County contends that it has no obligation under A.R.S. §§ 11–297.01 or 41–1837 to reimburse St. Joseph's, or any other private hospital[1], for emergency services

---

1. The procedure to be followed in order to receive medical care at county expense is contained in A.R.S. § 11–297(A):

 Except in emergency cases when immediate hospitalization or medical care is necessary for the preservation of life or limb no person shall be provided hospitalization, medical care or outpatient relief under the provisions of this article without first filing with a member of the board of supervisors of the county in which he resides a statement in writing, subscribed and sworn to under oath, that he is an indigent as shall be defined by rules and regulations of the state department of economic security, an unemployable totally dependent upon the state or county government for financial support, or an employable of sworn low income without sufficient funds to provide himself necessary hospitalization and medical care, and that he has been a resident of the county for the preceding twelve months.

 Reimbursement to private hospitals for emergency care rendered by them to indigents is governed by A.R.S. § 11–297.01:

 B. The county shall be liable for payment of all costs retroactive to the inception of treatment incurred by a private hospital or hospital operated by a university arising from emergency treatment and medical care administered at such hospital for a patient qualified for such care and treatment under the provisions of this article:

242

rendered to a patient who did not qualify as an indigent at the time of the patient's original admission.

The Department of Economic Security has defined indigency to include single individuals with annual net incomes of $2,100.00 or less, and the applicable regulation provides that "[n]et income is gross income from all sources less medical expenses incurred." [2] The pleadings and affidavits establish that McLain was a single person with an income of $4,576.00 during the twelve months immediately prior to his accident.

St. Joseph's concedes that McLain was not indigent within the regulatory definition when he was admitted to St. Joseph's on November 1, 1976. However, St. Joseph's contends that McLain became indigent while a patient at St. Joseph's when his hospital bill reached $2,476.00, because at that point his previous year's gross income, less his medical expenses, left him with less than $2,100.00. As an alternative basis in support of the trial court's judgment, St. Joseph's also asserts that McLain was an "employable of sworn low income" as described in A.R.S. § 11-297(A). On these bases, St. Joseph's claims that it was entitled to reimbursement for providing medical care to McLain.

█ Considering first St. Joseph's claim for reimbursement based upon the indigency of McLain, Maricopa County does not deny that McLain became indigent during his confinement at St. Joseph's. The depositions of Richard Trujillo, Jr., the eligibility director of the Maricopa County Hospital, and Candice Drury, a former eligibility interviewer with the Maricopa County Hospital, indicate that McLain was transferred to the Maricopa County Hospital because his bill for services at St. Joseph's made him indigent. Additionally, the depositions show that if McLain had been admitted initially at the County Hospital, that hospital would have billed him only for the first $2,476.00 in treatment. Nevertheless, the County contends that the legislative intent embodied in the statutory scheme for medical care of indigent persons requires that the question of indigency be determined at the time when the patient is first admitted to the hospital for emergency care. Moreover, the County asserts that to interpret the statutes in the manner urged by St. Joseph's would allow private hospitals to admit patients regardless of their income, incur large bills in excess of their ability to pay, and then pass the bills on to the county taxpayers.

A.R.S. § 11-297.01(B) provides the circumstances under which counties are required to reimburse private hospitals for emergency medical care of indigent patients. We find nothing in that statute requiring that the patient be qualified for medical care as an indigent as of the time of the original admission to the private hospital for emergency care.[3] Notwith-

1. When the emergent condition of the patient is such that it is deemed medically inadvisable to transport the patient from the private hospital or hospital operated by a university for further treatment.
2. When the county does not move the patient from the private hospital or hospital operated by a university within twelve hours after being notified by the private hospital or hospital operated by a university authorities of the location and condition of the patient.

2. A.C.R.R. R6-3-1213 reads as follows:
R6-3-1213 Definition of indigency for county medical care and hospitalization.
A.R.S. § 11-297.A gives the Arizona Department of Economic Security the responsibility to define indigency for purposes of eligibility for county medical care and hospitalization.

1. All public welfare recipients, and all foster home children whose care is paid for from State or Federal funds, are defined as indigent unless medical care is available from another source.
2. A person or family household, if not welfare recipients, is defined as indigent if it does not have:
a. Annual net income in excess of:
$2,100—If single person or married person, living alone.
$2,800—If married person living with spouse. Plus $350—For each additional dependent member of the household.
(Net income is gross income from all sources less medical expenses incurred.)

3. Neither does the Department of Economic Security regulation indicate that the allowance for "medical expenses incurred" is a test to be

standing the lack of statutory language imposing such a requirement, the County cites *Good Samaritan Hospital, Inc. v. State of Arizona ex rel. Maricopa County*, 18 Ariz. App. 321, 501 P.2d 949 (1972), as authority for its argument that a patient must be indigent at the time of admission in order to hold the County liable for reimbursement to the private hospital. However, no such conclusion may be drawn from that case. That opinion held that the County was not required to reimburse a private hospital for emergency care furnished to an escaped patient from the Arizona State Hospital because the County was not responsible for providing medical care to State Hospital patients. The patient was a ward of the State; therefore, the State rather than the County had the responsibility to furnish medical treatment to the inmate. This was regarded as an exception to the County's general responsibility for care of the indigent sick. *Id.* at 323–24, 501 P.2d at 951–52. Referring to A.R.S. § 11–297(A), the court stated:

> [R]eimbursement is required only where the county would have been initially responsible for furnishing medical care at county expense, and the emergency does not enlarge the county's obligation, but merely justifies treatment in some other hospital subject to reimbursement.

*Id.* at 323, 501 P.2d at 951. The patient was undeniably indigent upon entering the hospital, so the question of whether a patient could become indigent during the course of emergency hospitalization at a private hospital and thereby qualify the hospital for County reimbursement for costs thereafter incurred was not addressed.

The County urges that the ability to qualify as an indigent after original admission to a private hospital would result in numerous abuses of the system through unscrupu-

lously increased hospital charges. However, we believe such abuse is unlikely due to our determination, subsequently discussed in this opinion, that a private hospital would be denied statutory reimbursement if it fails to notify the county as to the presence and location of a patient who should have been reasonably deemed able to be removed from the private facility.[4]

Neither the applicable statutes nor case law support appellant's contention that a patient must qualify as indigent upon admission to a private hospital before that hospital may be reimbursed for emergency medical care provided. We therefore conclude that McLain became eligible for indigent care during his hospitalization at St. Joseph's. St. Joseph's argues that the statutory interpretation concerning indigency urged by the County would be unconstitutional and violate the due process and equal protection clauses of the United States and the Arizona Constitutions. However, because we have rejected the County's interpretation, it is not necessary to discuss these alleged constitutional issues. *State v. Church*, 109 Ariz. 39, 504 P.2d 940 (1973); *Nunez v. Arizona Mill Co.*, 7 Ariz.App. 387, 439 P.2d 834 (1968).

St. Joseph's has also urged that, separate and apart from McLain's status as an indigent, it has a right to reimbursement because McLain was an "employable of sworn low income without sufficient funds to provide himself necessary hospitalization." A.R.S. § 11–297(A). Since this alternative theory might have some bearing on St. Joseph's cross-appeal contention that it was entitled to reimbursement for the full period of McLain's hospitalization (not limited to the period of indigency), we deem it necessary to consider the matter.

 Reading the various statutes relating to medical care of indigents together,

---

applied only upon the initial admission to the hospital.

For the text of A.C.R.R. R6–3–1213, see note 2 *supra*. No argument is raised on appeal that the authorization to the Department of Economic Security to define indigency is an unlawful delegation of the legislative power, and, therefore, we do not address that issue.

4. Upon such notification by a private hospital, A.R.S. § 11–297.01(B) then requires the County to remove the patient within twelve hours or become "liable for payment of all costs retroactive to the inception of treatment."

it is our opinion that the only mandatory duty legislatively imposed upon the county boards of supervisors is to provide medical care to indigents, as defined by rules and regulations of the State Department of Economic Security. *See* A.R.S. §§ 11–291, 11–292, 11–300. The references in A.R.S. § 11–297(A) to "unemployable[s] totally dependent upon the state or county government for financial support," and to "employable[s] of sworn low income without sufficient funds to provide [themselves] necessary hospitalization and medical care" do not constitute additional categories of people who must receive care at public expense, as St. Joseph's contends. Rather, they are merely classes of persons who *may* be allowed nonemergency medical care at county expense upon application to, and receipt of an order from, a member of the board of supervisors. We, therefore, disagree with Division Two's holding in *McMullen v. Hargis*, 128 Ariz. 142, 624 P.2d 339 (App.1980), which characterized this section of the statutes as one which mandates medical care at county expense for persons in the additional categories. Our conclusion is required, we believe, when the various statutes are read in conjunction with A.R.S. § 11–300 which, at the time McLain was treated, provided:

> A person other than an indigent shall not receive public aid or be admitted into a home or hospital the expenses of which are paid by the county. A contractor or person having charge of a home or hospital who knowingly receives therein for medical attention or subsistence any person other than an indigent is guilty of a misdemeanor.

The County next urges that St. Joseph's is not entitled to reimbursement for the emergency care provided to McLain because St. Joseph's did not give the County prompt notice of the presence and location of McLain. The County says that logic demands that the private hospital give "prompt and repeated notice."

The statute, A.R.S. § 11–297.01(B), does not state when or how often notice of the presence of a possibly indigent patient must be given to the County. Clearly, a requirement for prompt notice would be desirable as a matter of sound public administration. However, the "courts will not read into a statute something which is not within the manifest intention of the legislature as gathered from the statute itself." *City of Phoenix v. Donofrio*, 99 Ariz. 130, 133, 407 P.2d 91, 93 (1965). A fair reading of the provisions of A.R.S. § 11–297.01(B) would generally require reimbursement to a private hospital for emergency medical care to an indigent until such time as it can no longer reasonably be deemed medically inadvisable to transport the patient to the County hospital. However, where the County has been notified that the patient may be transported, the private hospital's right to reimbursement is extended unless the County removes the patient within twelve hours of such notification.

In this case, St. Joseph's did not notify Maricopa County of McLain's presence at the hospital until November 22, 1976, over twenty days after he was admitted. Maricopa County moved McLain within twelve hours after receiving the notification. Despite the lapse of an apparently lengthy period of time, notice was given to the County as soon as the patient's attending physician deemed it medically advisable to transport him. More than this is not required by the statute.

The County next asserts that it is entitled to an equal voice with the private hospital in making the determination as to when the condition of the patient is such that it may be deemed medically advisable to transport the patient from the private hospital.

The evidence in the record before the trial court included two affidavits of William L. White, M.D., a neurosurgeon who attended McLain at St. Joseph's Hospital. He stated that McLain required a craniotomy for an intracerebral hematoma, which operation was performed on November 8, 1976, that he also had a spinal fracture, and that he required treatment in intensive care until November 22. Dr. White also stated that he "deemed [it] medically inadvisable to transport the patient" to another hospital

until November 22, and that a physician specializing in neurosurgery would be the most appropriate physician to determine the patient's condition and need for treatment. Conversely, H. W. Hale, M.D., a general surgeon with experience in the treatment of trauma patients, signed an affidavit indicating he had reviewed McLain's medical records and that, in his opinion, McLain could have been safely transferred to the County Hospital "by at least the 15th of November, if not sooner . . . ."

 Statutes should be given a sensible construction which will avoid an absurd result. *State v. Valenzuela*, 116 Ariz. 61, 567 P.2d 1190 (1977). The provisions of A.R.S. § 11–297.01(B)(1) should be construed as providing that when a physician or physicians who are qualified to render an opinion by training and experience reasonably deem it medically inadvisable to move the patient, based on sufficient facts and observations, their determination will be upheld in the absence of sufficient facts or opinions to controvert the reasonableness of the determination or the underlying facts or observations. Dr. Hale's opinion as reflected in his affidavit, although differing from the opinion of Dr. White, did not create a genuine issue of fact so as to preclude the granting of summary judgment on the issue of whether the "emergent condition of the patient" was such that it was "deemed medically inadvisable" to transport him to another facility. The validity and reasonableness of Dr. White's professional judgment as the patient's treating physician, and the supporting recitation of facts, were not controverted by the Hale affidavit and the medical records.

 The County also contends that under the terms of A.R.S. § 11–297.01(B)(2), if an indigent patient is moved from a private hospital by the county within twelve hours after being notified by the private hospital as to the location and condition of the patient, the county is not liable for any part of the medical costs already incurred by the private hospital. It is undisputed that the County removed McLain within twelve

hours after being notified by St. Joseph's. The County's contention is without merit. If a private hospital provides care for an indigent patient initially admitted for emergency treatment whose medical condition subsequently becomes such that he can be safely moved to the County hospital, the private hospital is not entitled to reimbursement from the county for such subsequent treatment under the terms of A.R.S. § 11–297.01 regardless of whether notice was given to the county. Conversely, even if notice is given to the county of the patient's location and condition, but the patient's condition is such that it is deemed medically inadvisable to move him, the private hospital must be reimbursed. The statute does not provide that all reimbursement is precluded if the county removes the patient within twelve hours after being notified, and we will not read such an absurd provision into the statute. *City of Phoenix v. Donofrio, supra.*

The final issue raised by the County is whether A.R.S. § 11–297.01(C) requires reimbursement to private hospitals for the full amount of their normal billed rates, or whether reimbursement should be for only the lower "Medicaid-Medicare" rate. A.R.S. § 11–297.01(C) provides:

C. The cost of hospital care and treatment at such private hospital or hospital operated by a university under the provisions of this section shall be a county charge payable by the county in which the patient maintains his residence to the private hospital or hospital operated by a university at a rate determined by the same method used for reimbursing providers of services under federal medical assistance programs or at such lower rate as the county and the private hospital or hospital operated by a university may agree upon.

The trial court granted summary judgment to St. Joseph's for its normal billed rates, less the portion of the McLain bill which was incurred before he became indigent while at St. Joseph's.[5] In support of

---

5. The court deducted $2,476.00 from St. Joseph's full normal billed charges, plus $201.00 for the last day of care, as St. Joseph's had agreed to waive its claim for reimbursement for the last day.

limiting indigent health care payments to those costs payable under "Medicaid,"[6] the County cites Arizona Attorney General's Opinion No. I78–244, in which the Attorney General found that the phrase "federal medical assistance programs" in § 11–297.-01(C) referred to Medicaid. The County also cites an administrative regulation of the Arizona State Department of Health, A.C.R.R. R9–22–117, which explains the interrelationship between Medicaid and other federal health programs.

In support of its claim for the full amount of its normal billed rates, St. Joseph's cites A.R.S. § 41–1837, which provides:

> A. When an indigent emergency medical patient is received by an emergency receiving facility from a licensed ambulance, the county shall be liable pursuant to § 11–297.01, to the ambulance service for the cost of transporting the patient and to the facility for the reasonable costs of all medical services rendered to such indigent by the facility until such patient is transferred by the county to the county hospital, or some other facility designated by the county.

St. Joseph's correctly states that A.R.S. § 41–1831(14), formerly § 41–1831(15), which defines the "reasonable cost of medical services," was amended in 1978 to provide that such costs cannot exceed rates filed with the Department of Health Services pursuant to A.R.S. § 36–436 (the hospital's normal billed charges). Before the 1978 amendments, A.R.S. § 41–1831(15) was identical to A.R.S. § 11–297.01(C), defining "reasonable cost of medical services" to mean an amount calculated "at a rate determined by the same method used for reimbursing providers of services under federal medical assistance programs or at such lower rate as the county and the private hospital or hospital operated by a university may agree upon." St. Joseph's reasons that because no hospital would have agreed to lose money by accepting reimbursement at a rate lower than its own costs, the statute must have authorized reimbursement for full billed charges as "reasonable cost." Under that interpretation, a hospital could contract to accept reimbursement for more than its actual costs, but less than its regular full charges. St. Joseph's urges that the 1978 amendment to A.R.S. § 41–1831 should be used to aid in the construction of the previous section and of A.R.S. § 11–297.01, as an indication that the reimbursement for full billed charges was authorized in 1976, when the charges at issue here accrued.

St. Joseph's also contends that under the federal medical assistance program[7], private hospitals are not required to accept lower rates of payment as opposed to their normal bill charges. Rather, such hospitals are free to either contract with the federal government at lower rates, or to refuse to accept Medicare-Medicaid patients at the lesser charges. *See* 42 U.S.C. § 1395cc. However, St. Joseph's notes that in Arizona, private hospitals which maintain facilities to provide emergency care are obliged to accept and treat emergency patients. *Guerrero v. Copper Queen Hospital*, 112 Ariz. 104, 537 P.2d 1329 (1975).[8] Therefore, the argument continues, if a private hospital is *required* to accept emergency patients, yet is denied its freedom to contract for rates higher than those prescribed by

---

6. Title 42 United States Code, Subchapter XIX, entitled "Grants to States for Medical Assistance Programs," 42 U.S.C.A. § 1396 *et seq.*

7. A.C.R.R. R9–22–119, found in Title 9 of Arizona's Administrative Rules and Regulations, explains that payment rates under the federal Medicaid program (Title 19 of the United States Code) are to be based upon the same as those under the federal Medicare provisions (Title 18 of the United States Code). For purposes of clarity, we shall hereafter refer to the rate of payment in question as the "Medicaid" rate.

8. The County correctly contends that *Guerrero* itself provides that "such a hospital may not deny emergency care to any patient *without cause*." 112 Ariz. at 106, 537 P.2d at 1331 (emphasis added). The County argues that the fact that "County General Hospital is only two and one-half miles from St. Joseph's would appear to constitute 'cause'" in most cases.

the federal program, then it will be unconstitutionally deprived of its property without just compensation.[9]

As noted above, the statutes in effect in 1976 were consistent in providing that private hospitals which provided care to indigent patients would be reimbursed "at a rate determined by the same method used for reimbursing providers of services under federal medical assistance programs." A.R.S. §§ 11–297.01(C) and 41–1831(15) (in effect in 1976). We agree with the Arizona Attorney General's cited opinion that this statutory language refers to Title 42 United States Code, Subchapter XIX, entitled "Grants to States for Medical Assistance Programs," 42 U.S.C. § 1396 *et seq.*, commonly referred to as "Medicaid." The federal Medicaid program was adopted in 1965, some three years before enactment of A.R.S. § 11–297.01. Although there are several other federal programs relating to payment for medical services,[10] the titles differ and the Medicaid program is the only one referring to a "medical assistance program" which is the terminology used in A.R.S. § 11–297.01(C) and former § 41–1831(15).

St. Joseph's suggests that to interpret the statutes as limiting its recovery to the "Medicaid" rate would be unreasonable because it would deprive it of its right to recover its normal billed charges. We disagree. St. Joseph's admits that the "Medicaid" rate allows reimbursement for the hospital's actual cost of rendering the emergency care. Reimbursement at the "Medicaid" rate has been held not to be a taking of property that would require payment of additional compensation. *New Jersey Asso-*

*ciation of Health Care Facilities v. Finley,* 168 N.J.Super. 152, 402 A.2d 246 (App.1979), *affirmed sub nom. Matter of Review of Health Care Administration Board,* 83 N.J. 67, 415 A.2d 1147 (1980), *appeal dismissed sub nom. Wayne Haven Nursing Home v. Finley,* 449 U.S. 944, 101 S.Ct. 342, 66 L.Ed.2d 208 (1980) (hereinafter *Finley* ).

Amicus curiae, the Arizona Hospital Association, argues that unless the counties reimburse private hospitals for indigent care at the full billed rate, the hospitals must pass along the uncompensated portion of the cost of indigent care by increasing the charges to paying patients. Amicus contends that this would result in an inequitable "tax levied upon the sick", and that these costs should more properly be distributed among the county taxpayers at large. This argument was advanced in *Finley, supra,* in which the court found "nothing invidious in the notion that to establish [a just and reasonable return on equity] the home may have to charge its paying patients sufficient to enable it to carry a reasonable number of Medicaid patients." 168 N.J.Super. at 167, 402 A.2d at 254. From our review of the cases dealing with reimbursement under Medicaid programs, we are convinced that the *Finley* court was correct. As stated in *Connecticut State Department of Public Welfare v. Department of Health, Education, and Welfare, Social and Rehabilitation Service,* 448 F.2d 209, 213 (2d Cir. 1971):

> The Social Security Act provides "for payment of the reasonable cost (as determined in accordance with standards approved by the Secretary and included in

---

**9.** In this regard, *cf. Murphy Nursing Home, Inc. v. Rate Setting Commission,* 364 Mass. 454, 305 N.E.2d 837 (1973), and *Massachusetts General Hospital v. City of Cambridge,* 347 Mass. 519, 198 N.E.2d 889 (1964). In these cases no taking was found where the hospitals' reimbursement for caring for indigent sick was below the actual cost because the hospitals were not legally obligated to receive the patients. The courts noted, however, that had the hospitals been legally obliged to receive and care for the patients, "a different question would be presented." 364 Mass. at 461, 305 N.E.2d at 842; 347 Mass. at 522, 198 N.E.2d at 891.

**10.** *See, e. g.,* Title 10, United States Code, Chapter 55, entitled "Medical and Dental Care", 10 U.S.C. § 1071 *et seq.,* providing for such care to members of the uniformed services and their dependents. Title 42 United States Code, Chapter 22, entitled "Indian Hospitals and Health Facilities", 42 U.S.C. § 2001 *et seq.,* allowing the Department of Health and Human Services to contract with states or private organizations to provide health care to Indians.

the plan) of inpatient hospital services provided under the plan." 42 U.S.C. § 1396 a(a) (13)(D). The Secretary has interpreted this to mean payment of approximately the actual costs of the services provided. 45 C.F.R. § 250.30. This interpretation is reasonable and in accordance with the intent of Congress that "the costs of services of individuals covered by the program will not be borne by individuals not covered."

See *National Union of Hospital and Health Care Employees v. Carey*, 409 F.Supp. 1197 (S.D.N.Y.1976), *affirmed*, 557 F.2d 278 (2d Cir. 1977). The Medicaid reimbursement rate pays the actual costs of the services provided to the indigent patients, so paying patients do not bear those costs. Like the *Finley* court, we see nothing invidious in the notion that private hospitals may have to charge their paying patients more to establish a reasonable profit.

■ In interpreting statutes, courts are under a duty to give statutes operation and effect and should avoid a construction that leaves the statute meaningless or of no effect. *State v. Schoner*, 121 Ariz. 528, 591 P.2d 1305 (App.1979). Applying that principle to the language of A.R.S. § 11–297.-01(C), and to § 41–1831(15), as it appeared in 1976, we believe the Legislature intended to limit reimbursement to private hospitals for emergency care of indigents to no more than the rate recoverable under "Medicaid." To this extent, the judgment of the trial court was in error and must be adjusted down to that level. However, the record before this court does not contain any computation of that amount. One of the County's motions alleges that the "Medicaid rate" is "approximately 65–70% of the private rates." The County also submitted the records of another patient, Margaret Lund, including a document entitled "Charges to Cost Conversion" which reveal a bewildering number of conversion factors by which various items of the billed charges were multiplied to determine the cost of the services provided. Because we are unable to determine the proper amount of the judgment, we must remand the matter to the

trial court for determination of this amount in accordance with this decision.

■ Having determined the issues raised by the County in its appeal, we now consider St. Joseph's cross-appeal. St. Joseph's contends that it was entitled to reimbursement for the entire period of time during which it provided hospitalization care to McClain, without subtracting the $2,476.00 amount by which McLain's income exceeded the indigency eligibility figure of $2,100.00. This contention is based upon that portion of A.R.S. § 11–297.01(B) which states: "The county shall be liable for payment of *all costs retroactive to the inception of treatment* . . . ." (emphasis added).

We have previously held in this opinion that McLain's indigency constitutes the only valid basis for St. Joseph's claim for reimbursement for emergency hospital care. We further held that, although McLain did not qualify as an indigent at the inception of his hospitalization treatment, he thereafter became an indigent within the governing statutory and regulatory provisions when his accruing hospital expenses reached an amount sufficient to reduce his prior income to a qualifying indigency level. While the right to reimbursement given by A.R.S. § 11–297.01(B) is made "retroactive to the inception of treatment", the "treatment" referred to is statutorily limited to that which has been rendered "for a patient qualified for such care and treatment . . . ." The retroactivity of St. Joseph's right to reimbursement was thus limited to the time when McLain became qualified as an indigent. Therefore the trial court correctly concluded that the County was not liable to St. Joseph's for the first $2,476.00 of McLain's bill.

St. Joseph's urges that it will be deprived of property without just compensation if it cannot recover its billed charges for the entire period from Maricopa County. We disagree. As stated above, the County was not liable for the $2,476.00; rather, this portion of the bill was McLain's personal responsibility. As to the portion of the St. Joseph's bill incurred before McLain be-

came eligible for County care, St. Joseph's was in the same position as with any non-indigent patient. St. Joseph's bore the risk that its bill would not be paid just as it does when treating any paying patient. St. Joseph's argument is without merit.

Finally, St. Joseph's contends that it is entitled to its full billed charges under theories of restitution and unjust enrichment. These theories might be relevant as against McLain, but as against the County they have no application.

The judgment of the superior court is affirmed as modified. We remand the matter for determination of the amount of the judgment consistent with this decision.

HAIRE and JACOBSON, JJ., concur.