804 P.2d 95

STATE of Arizona, Appellee,

v.

Anthony Joseph GENDRON, Appellant.

No. 1 CA–CR 88–1236.

Court of Appeals of Arizona,
Division 1, Department C.

March 29, 1990.

Reconsideration Denied May 10, 1990.

Review Granted in Part and Denied in Part Feb. 5, 1991.

Robert K. Corbin, Atty. Gen. by Jessica G. Funkhouser, Chief Counsel, Criminal Div., and Gerald R. Grant, Asst. Atty. Gen., Phoenix, for appellee.

**564**

Dean W. Trebesch, Maricopa County Public Defender by Garrett W. Simpson, Deputy Public Defender, Phoenix, for appellant.

## OPINION

GERBER, Judge.

Appellant Anthony Joseph Gendron (defendant) appeals from his convictions of unlawful flight from a law enforcement vehicle, aggravated assault and criminal damage. He seeks reversal of his conviction for unlawful flight from a law enforcement vehicle because:

(1) the statute under which he was convicted is unconstitutionally vague;

(2) the trial court improperly defined "wilfully";

(3) the trial court erred by refusing to instruct the jury on justification and mistake of fact theories;

(4) the trial court erred by precluding evidence that police officers physically abused defendant after his arrest, and

(5) the trial court erred by refusing to instruct the jury on the lesser included offense of failure to obey a police officer.

Defendant seeks to reverse the aggravated assault and criminal damage convictions because the trial court erred by:

(1) failing to instruct the jury on justification and mistake of fact theories, and

(2) precluding evidence of the police officers' alleged abuse.

### Facts

On April 1, 1988, Department of Public Safety Sergeant William Cramer observed defendant Gendron riding a motorcycle and passing stopped vehicles in the same lane of an off ramp. Cramer motioned him to stop on the ramp, but Gendron told Cramer that he was running out of gas. Instead of complying with the order, Gendron drove off the ramp and through a gas station. Cramer pursued him with his siren and emergency lights activated. Gendron finally stopped in a motel parking lot. Cramer approached defendant, now stationary, and said: "Get off that motorcycle or I'll blow you away." Gendron then sped away through stoplights and stop signs. Cramer chased, cornered and arrested him with the help of two other police officers. The police officers' motorcycles were damaged during the chase.

### Analysis

I. *The Unlawful Flight Conviction*

1. Is A.R.S. § 28–622.01 unconstitutionally vague?

■ Defendant was convicted of violating A.R.S. § 28–622.01 which states in part:

Any driver of a motor vehicle who wilfully flees or attempts to elude a pursuing official law enforcement vehicle ... is guilty of a class 5 felony.

On appeal, defendant claims that the use of "wilfully" renders the statute unconstitutionally vague because there is no statutory definition of "wilfully" to give fair notice of the prohibited conduct. Gendron's assertion that there is no statutory definition of "wilfully" is incorrect. A.R.S. § 1–215(36) defines "wilfully" to mean: "that a person is aware or believes that his or her conduct is of that nature or that the circumstance exists." The use of "wilfully" in various statutes has been upheld in several Arizona cases. *See Shumway v. Farley*, 68 Ariz. 159, 203 P.2d 507 (1949); *State v. Schoner*, 121 Ariz. 528, 591 P.2d 1305 (App.1979). *Accord State v. Mather*, 28 Wash.App. 700, 626 P.2d 44 (1981) (statute prohibiting driver of motor vehicle from wilfully attempting to elude a law enforcement vehicle is not vague or overly broad because wilfulness in this context is identical with knowledge). Therefore, defendant's first claim fails.

2. Did the trial court err by defining "wilfully" as "voluntarily and intentionally"?

■ Defendant next claims that the trial court improperly defined "wilfully" when it instructed the jury:

*An act is wilfully done if it is done voluntarily and intentionally.*

Intentionally, or with the intent to means, with respect to a result or to conduct described by a statute defining an offense, that a person's objective is to

cause that result or to engage in that conduct.

Knowingly means, with respect to conduct or to a circumstance described by a statute defining an offense, that a person is aware or believes that his or her conduct is of that nature or that the circumstance exists. It does not require any knowledge of the unlawfulness of the act or omission.

(Emphasis added.) Defendant contends that "intentionally" denotes a lower standard of culpability than "wilfully" and violates his "right to be tried under a more stringent standard" which he states as "the willful state of mind." Defendant is incorrect. The definition of "wilfully" in A.R.S. § 1–215(36) is equivalent to the definition of "knowingly" given in A.R.S. § 13–105(6). If acting knowingly (and by definition wilfully) suffices to establish an element of a crime, that element is also established by evidence that a person acts intentionally. A.R.S. § 13–202(C). Thus, a definition which states that wilfulness can be proven by evidence of intentional behavior complies with A.R.S. § 13–202 and does not constitute error. *Accord Shumway v. Farley, supra* ("wilfully" means intentionally or voluntarily in statute authorizing adoption without consent of parent who has wilfully deserted and neglected to provide).

3. Did the trial court err by refusing defendant's requested jury instructions?

■ The trial court refused to instruct the jury on justification and mistake of fact theories. Gendron claims on appeal that these instructions should have been given because the illegality of Cramer's threat to kill him justifies his flight because of fear for his own safety.[1] He asserts that any mistake he made regarding Cramer's threat negated the required "wilful" mental state.

Gendron admitted that he disobeyed Cramer's initial command to pull over and get off the motorcycle. He did not pull over when Cramer turned on his siren and lights and thereby violated § 28–622.01. His reaction to Cramer's threat cannot justify his flight *before* Cramer's threat.[2] Therefore, any error by refusing the instructions for the unlawful flight committed *before* the threat is harmless.

4. Did the trial court err by precluding evidence of defendant's alleged physical abuse?

■ The state sought by a motion *in limine* to limit evidence that the police officers physically abused defendant after his arrest. The state argued that the evidence was irrelevant to whether Gendron unlawfully fled from the officer. The trial court granted the motion. Gendron argues on appeal that this evidence was relevant to help him "complete the story" that he did not flee from Cramer wilfully but only out of fear due to Cramer's threat that he would be blown off the motorcycle if he did not get off it.

The evidence was uncontroverted that Gendron fled from Cramer *before* the threat, thereby violating A.R.S. § 28–622.01. The fact that Cramer threatened him *after* he initially fled has no bearing on his state of mind when he began his flight. Similarly, whether defendant's fears were realized by the alleged assault has no relevance to why he initially fled from Cramer. The trial court acted within its discretion by excluding this evidence.

5. Did the trial court err by refusing to instruct the jury on the lesser included offense of failure to obey a police officer?

■ Gendron's requested jury instruction on failure to obey a police officer was refused. He now claims this was error because failure to obey a police officer is a lesser included offense of unlawful flight from a law enforcement vehicle. Failure to obey a lawful order of a police officer is

---

1. As the trial court correctly noted, defendant may raise allegations of excessive threats and force in a civil proceeding.

2. Defendant was not charged with separate counts of unlawful flight—one before the threat and another after the threat. Instead, he was charged with only one count of unlawful flight.

defined by A.R.S. § 28–622: "No person shall wilfully fail or refuse to comply with any lawful order or direction of any police officer invested by law with authority to direct, control or regulate traffic."

██ An instruction given for a lesser included offense is proper when (1) the lesser offense is composed of some but not all of the elements of the greater offense so that it is impossible to commit the greater without committing the lesser offense and (2) the evidence supports an instruction on the lesser offense. *State v. Bay,* 150 Ariz. 112, 117, 722 P.2d 280, 285 (1986), citing *State v. Celaya,* 135 Ariz. 248, 251, 660 P.2d 849, 852 (1983). A lesser included offense instruction is inappropriate when the evidence is such that the defendant can only be guilty of the crime charged or not guilty at all. *State v. Williams,* 144 Ariz. 479, 486, 698 P.2d 724, 731 (1985).

It is undisputed that Gendron failed to stop his motorcycle when he was pursued by Cramer. The only issue is whether defendant was justified in doing so. If he is guilty, he can only be guilty of the offense charged and no other. We find no error in refusing the instruction.

II. *The Aggravated Assault and Criminal Damage Convictions*

1. Did the trial court err by denying defendant's requested jury instructions?

Gendron claims that he should have been allowed to present a justification defense to the jury for the aggravated assault and criminal damage counts.[3] He claims that after stopping his original flight, he fled from Cramer the second time only out of fear for his life. He claims that this fear negated any criminal state of mind for the aggravated assault and criminal damage charges resulting from his second flight. He requested the following instructions in support of this defense:

A person is not justified in using deadly physical force to stop a fleeing suspect, who posed no threat to the person attempting to use deadly force.

A person may not refuse a lawful order of a police officer. However, a person may take action to prevent the use of excessive force against him.

Ignorance or a mistaken belief as to a matter of fact does not relieve a person of criminal liability unless it negates the culpable mental state required for the offense.

Ignorance or mistake as to a matter of law does not relieve a person of criminal responsibility.

Gendron apparently wished to present the theory that Cramer's deadly threat to "blow you away" was unlawful and that he justifiably or mistakenly fled the second time to escape this deadly threat.

██ It is undisputed that Cramer threatened Gendron with deadly force ("blow you away"). Under A.R.S. § 13–410(A), a police officer may threaten deadly force against a felon fleeing from justice or resisting arrest with physical force. Once stopped, Gendron was doing neither of these acts. That Cramer's threat is couched in disjunctive language does not diminish its unlawfulness under A.R.S. § 13–410(A). The *use* of deadly force is justified where the officer fits within A.R.S. § 13–410(C). The fact that Gendron was stopped at the time of the "blow you away" statement also negates authority to use deadly force against him.

██ When an officer threatens inappropriate deadly force, a suspect like Gendron could well fear its use. A.R.S. § 13–404(B) creates a limited right for members of the public to resist excessive police force. How to do so is not defined; flight is not precluded. The fact that Gendron resumed his flight a second time only after the "blow you away" threat supports the defense claim that he "took action" motivated by a desire to escape the officer's deadly threat. It is a factual question for a jury whether this motive to avoid deadly force negates the mental state needed for the aggravated assault and criminal damage charges arising from this second flight.

---

**3.** We note that defendant requested these instructions at trial for the unlawful flight charge but not for the aggravated assault and criminal damage charges. He therefore failed to preserve this issue for our review and we are limited to a fundamental error analysis.

For this reason, the requested instructions should have been given regarding (1) Gendron's right under A.R.S. § 13–404(B) to take action to avoid excessive force and (2) the possibility that this motivation would negate the mental state needed to establish the aggravated assault and criminal damage charges.

2. Did the trial court err by precluding the evidence of defendant's alleged physical abuse?

 Defendant wished to introduce evidence that the police officers physically abused him after his arrest. He appears to assert that this evidence could shed light on the reasonableness of his fear and his flight in reaction to Cramer's threat. This evidence, however, is highly prejudicial and could have inflamed and confused the jury. While it might be relevant in a civil suit against the police department, its relevance in a criminal case is marginal at best because it sheds no light on the crimes charged. We do not find any abuse of the trial court's discretion.

Accordingly, the aggravated assault and criminal damage convictions are reversed. The unlawful flight conviction is affirmed.

FIDEL, P.J., and EUBANK, J., concur.