474 P.2d 840

Effie L. KEMP, personal representative of the Estate of William Kemp, deceased, for and on behalf of herself as surviving wife and for and on behalf of Laura Marie Kemp, Collette Kemp, Collene Kemp, Lynn Ann Kemp and William T. Kemp, surviving children of said deceased, Appellant,

v.

PINAL COUNTY, a political subdivision of the State of Arizona, Appellee.

No. 2 CA–CIV 800.

Court of Appeals of Arizona, Division 2.

Sept. 25, 1970.

Rehearing Denied Nov. 10, 1970.

Review Denied Dec. 22, 1970.

———◇———

Charles M. Wilmer, and Snell & Wilmer, by Mark Wilmer, Phoenix, for appellant.

Anderson & Holloway, by Jack Anderson, Phoenix, for appellee.

HOWARD, Chief Judge.

This is an action for wrongful death. The plaintiff appeals from a jury verdict in favor of the defendant, Pinal County.

On the night of February 5, 1965, the deceased attended a cocktail party and banquet at a hotel in Casa Grande, Arizona. He was seen drinking in the "hospitality" room at 2:30 o'clock a. m. on February 6, 1965. At approximately 4:40 o'clock a. m., deceased approached the hotel security guard, Jess Baldwin, and asked him the way to the Maricopa-Casa Grande Highway. Baldwin gave him directions. The deceased was last seen alive driving away from the hotel in his 1962 Volkswagen into the early morning darkness.

There was evidence that the deceased had been drinking intoxicants since noon of February 5 and that when he left the hotel he was under the influence.

At 7:00 o'clock a. m., the sheriff arrived at the intersection of the Maricopa-Casa Grande Highway, the scene of a fatal one-car accident. Kemp was under the overturned Volkswagen, dead.

Since there were no eye-witnesses to the accident, expert testimony was introduced by the plaintiff in explanation of what had occurred. The testimony revealed that just prior to the accident deceased was traveling north on Anderson Road at between forty-six and fifty-two miles per

hcur; that Anderson Road intersects in a "T" intersection with the Maricopa-Casa Grande Highway which runs east and west; that 193 feet before the intersection there is a railroad crossing, marked with railroad cross-bucks and a yellow warning sign; that the deceased failed to turn at the intersection, but instead, continued in a northerly direction across the intersection without braking his vehicle and into the desert where his vehicle overturned. There were no traffic signs indicating the existence of the intersection.

In the trial court the plaintiff contended that the defendant, Pinal County, was negligent in failing to erect signs warning of the existence of the intersection. Defendant contended that it was not negligent and defended on the basis of contributory negligence. In order to counter this defense it was the plaintiff's position at trial that Pinal County was guilty of gross negligence.

The plaintiff contends the court erred by including the following portion of A.R.S. § 28–701 in a negligence per se instruction:

"A. No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing * * *.

* * * * * *

E. The driver of every vehicle shall, consistent with the requirements of subsection A, drive at an appropriate reduced speed when approaching and crossing an intersection * * * and when special hazards exist with respect to * * weather or highway conditions."

Relying on the authority of J. H. Welch & Son Contracting Co. v. Gardner, 96 Ariz. 95, 392 P.2d 567 (1964) and the authorities cited therein, plaintiff contends that the giving of the instruction was error since the evidence showed that deceased had no knowledge of the existence of the intersection and therefore, had no duty to reduce the speed of his automobile. The evidence shows otherwise.

At the trial Mr. Baldwin testified to the conversation which he had with the decedent concerning the location of the Maricopa-Casa Grande Highway as follows:

"Q. Do you remember what you said to him?

A. No, I just told him about how far it [Anderson Road] was down to where it turned.

Q. That would be about how far, Jess?

A. About four miles.

Q. And then did you tell him how far it was across to the Maricopa Road?

A. No, I didn't tell him how far it was, I told him that the Maricopa Road was right across the tracks."

At a later point the witness, Baldwin, also answered,

" * * * but I told him Maricopa highway was right along the railroad tracks."

Photographs admitted into evidence show that the intersection was located right after the railroad tracks. Railroad cross-bucks and a yellow sign were also in location at the tracks so that any car traveling down the highway at nighttime would see them before crossing the tracks. Although the deceased did not know that the intersection was a dead-end "T" intersection he did know that it was located right after the railroad. Deceased knew he had to negotiate a turn at the intersection and if he had reduced his speed when he was warned of the existence of the railroad, the accident would not have happened.

Plaintiff next contends that the court erred in failing to give an instruction on gross negligence instructing the jury in effect, that if the defendant was guilty of gross negligence, then the defense of contributory negligence on the part of the deceased cannot be maintained. As authority for the gross negligence instruction the appellant cites the case of Bryan v. Southern Pacific Company, 79 Ariz. 253, 286 P.2d 761 (1955). In *Bryan* the court defined wanton or gross negligence

as the creation of an unreasonable risk of bodily harm to another together with a high degree of probability that substantial harm will result. In that case the court held that the practice of the railroad in making "flying switches" across the streets of populous towns can be wanton negligence if adequate means are not employed to protect the traveling public, particularly if made at nighttime without lights, bells, whistles, brakemen, guards or adequate warning devices. There is no fixed rule for the ascertainment of what constitutes gross negligence. 65 C.J.S. Negligence § 8(4). It is reversible error in this state to give an instruction on a legal theory to which there is not substantial evidence. Butane Corporation v. Kirby, 66 Ariz. 272, 187 P.2d 325 (1947); Salinas v. Kahn, 2 Ariz.App. 348, 409 P.2d 64 (1965); Newman v. Piazza, 6 Ariz.App. 396, 433 P.2d 47 (1967). It is equally reversible error not to give an instruction on a legal theory within the issue of the case which is supported by substantial evidence. Trauscht v. Lamb, 77 Ariz. 276, 270 P.2d 1071 (1954). We noted in the case of Newman v. Piazza, supra, that Restatement (second) of Torts § 500 has downgraded to some extent the concept of gross negligence set forth in Restatement of Torts § 500, comment a and approved in Butane Corporation v. Kirby, supra.[1]

Restatement (second) of Torts § 500 reads as follows:

"The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, *but also that such risk*

*is substantially greater than that which is necessary to make his conduct negligent.*" (Emphasis added)

We do not believe that the change in the Restatement, however, has changed the concept of gross negligence in this state. In Scott v. Scott, 75 Ariz. 116, 252 P.2d 571 (1953), our Supreme Court said:

"Wanton negligence is highly potent, and when it is present it fairly proclaims itself in no uncertain terms. It is 'in the air', so to speak. It is flagrant and evinces a lawless and destructive spirit."

In Nichols v. Baker, 101 Ariz. 151, 416 P.2d 584 (1966), our Supreme Court indicated that a wanton negligence instruction should be given if there is any substantial evidence to support the instruction, though such evidence must be more than slight and inconclusive.

The plaintiff in this case bases her contention that a gross negligence instruction should be given on the testimony of her expert witnesses and in particular of an expert witness who conducted an experiment with a Volkswagen sedan similar to the one driven by the deceased. This experiment indicated that if the driver was driving the automobile at nighttime on high beam and at the legal speed limit, that, by the time he was aware of the fact that there was a "T" intersection, and considering his reaction time, the driver would not be able to safely make a turn at the intersection.

Although there was evidence upon which the jury might find the County liable on the basis of negligence, and although that negligent conduct may be "very negligent" we do not believe that such conduct constituted gross or wanton negligence. Gross or wanton or willful misconduct is different from ordinary negligence in quality and not degree. A person can

1. Restatement of Tort § 500, comment a reads as follows:
   " * * * Although conduct to be reckless must be negligent in that it is unreasonable, it must be something more than negligent. It must not only be unreasonable, but it must contain a risk of harm to others in excess of that necessary to make the conduct unreasonable and therefore, negligent. *It must involve an easily perceptible danger of substantial bodily harm or death and the chance that it will so result must be great.*" (Emphasis added)

be very negligent and still not be guilty of gross negligence. This was a country road surrounded by farming land and desert. The intersection had recently been paved (three months before the accident) and no previous accidents had occurred at this intersection since its improvement. We do not believe that the evidence of negligence in this case meets the standards for gross negligence set forth in Scott v. Scott, supra.

Affirmed.

KRUCKER and HATHAWAY, JJ., concur.