826 P.2d 1217

James Dean WALLS and McAllis
Walls, husband and wife,
Plaintiffs-Appellants,

v.

ARIZONA DEPARTMENT OF PUBLIC
SAFETY and Ronnie Singleton,
Defendants-Appellees.

No. 1 CA-CV 90-216.

Court of Appeals of Arizona,
Division 1, Department C.

Dec. 19, 1991.

Brandes, Lane & Joffe, P.C. by David A. Joffe and Laurie S. Superfon, Phoenix, for plaintiffs-appellants.

Fritz, Childers & Osborne by James W. Fritz, Mesa, for defendants-appellees.

## OPINION

EUBANK, Acting Presiding Judge.

Appellants James Dean Walls and McAllis Walls [1] appeal from the trial court's grant of summary judgment in favor of the Arizona Department of Public Safety ("DPS") and Ronnie Singleton, a police officer ("Singleton"), and from the trial court's denial of their motion to amend their complaint. We affirm the trial court's grant of summary judgment in favor of DPS and Officer Singleton and hold that the trial court did not abuse its discretion in denying Walls' motion to amend the complaint.

## I. FACTS AND PROCEDURAL BACK-GROUND

This action arose out of a multiple vehicle collision that occurred on I-17. The facts are generally undisputed. On the evening of February 27, 1988, a vehicle driven by Samuel Goldberg ("Goldberg") became disabled in the center northbound lane of I-17. Goldberg left his vehicle in that lane and called DPS for assistance. Officer Singleton was summoned to the scene in response to a Code 34 request ("Motorist Needs Help"). While Goldberg had left his car unattended, a vehicle driven by Lloyd Cowan came to a stop behind Goldberg's vehicle in order to avoid colliding with it. A vehicle driven by Walls then collided with the rear of Cowan's vehicle, causing the Cowan vehicle to collide with the Goldberg vehicle.

As Officer Singleton approached the area where Goldberg's car was located, he observed a vehicle being driven by Jimmy Chayrez Espinoza ("Espinoza") weaving or

---

1. James Dean Walls and McAllis Walls filed suit jointly. However, because James Dean Walls was the party involved in the accident in question, for clarity he will be referred to as "Walls."

drifting towards the right lane on I–17. Based upon his observations, Singleton suspected that Espinoza was driving under the influence of alcohol and concluded that he had probable cause to make an investigatory stop of the Espinoza vehicle. Before Singleton activated his emergency lights and stopped Espinoza, the vehicle driven by Espinoza collided into the rear of the Walls vehicle. Walls was injured in the collision. Espinoza was arrested following the collision, and his blood alcohol level was determined to be .218.

Walls' complaint against DPS and Officer Singleton sought general damages and alleged Singleton was negligent in failing to stop Espinoza prior to Espinoza's collision with the Walls vehicle.[2] DPS and Officer Singleton filed a motion for summary judgment, arguing that there were no facts indicating that the conduct of either Singleton or DPS constituted negligence; that, absent willful intent or gross negligence, A.R.S. § 12–820.02 extends a qualified immunity to DPS officers for acts of negligence committed within the scope of their employment; and that there were no facts to support a finding that Singleton acted with either intent or gross negligence. In support of the motion for summary judgment, DPS and Officer Singleton submitted the affidavit of Singleton. The affidavit stated that when Singleton concluded that he had probable cause to make an investigatory stop of Espinoza's vehicle, he reached for the switch to activate the emergency lights, but before being able to do so, and almost instantaneously, the Espinoza vehicle crashed into the rear of the Walls vehicle.

After DPS and Officer Singleton filed their motion for summary judgment, Walls moved to amend the complaint to add a claim based on gross negligence against Singleton and DPS. In Walls' subsequent response to the motion for summary judgment, the only evidence submitted to controvert appellees' statement of facts was the affidavit of Richard Todd ("Todd"), a private investigator who interviewed Sin-

gleton on behalf of Walls. Todd stated in his affidavit that Singleton told him that he had noted that the Espinoza vehicle was weaving. Singleton also allegedly told Todd that he had intended to stop the Espinoza vehicle for some period of time, but, due to the fact that barricades in the area restricted traffic, he felt that allowing Espinoza to operate his vehicle until he could have safely stopped him was the more appropriate approach for him to take.

The trial court considered the motion for summary judgment and the motion to amend the complaint at one hearing. It subsequently granted summary judgment in favor of DPS and Officer Singleton and denied Walls' motion to amend. The trial court also denied Walls' motion for reconsideration, and Walls timely filed this appeal.

## II. A.R.S. § 12–820.02

■ Walls argues on appeal that, in granting summary judgment in favor of DPS and Officer Singleton, the trial court improperly applied A.R.S. § 12–820.02 to the case at bar. In their motion for summary judgment, DPS and Singleton argued that they were immune from Walls' claims pursuant to A.R.S. § 12–820.02. That statute creates a qualified immunity for public employees and entities for certain actions. A.R.S. § 12–820.02 provides in pertinent part as follows:

> Unless a public employee acting within the scope of his employment intended to cause injury or was grossly negligent, neither a public entity nor a public employee is liable for:
>
> 1. The failure to make an arrest or the failure to retain an arrested person in custody.

Walls argues that A.R.S. § 12–820.02 does not confer a qualified immunity on DPS and Officer Singleton because Walls' claim is based on Singleton's failure to make an investigatory stop, not on his failure to make an arrest. There are no Ari-

---

**2.** Walls also alleged negligence counts against Espinoza, the Estate of Samuel Goldberg, and the Arizona Department of Transportation

("ADOT"). The claims against Espinoza and ADOT were subsequently dismissed with prejudice upon stipulation.

**594**

zona cases interpreting the term "arrest" within the context of A.R.S. § 12–820.02(1). However, Walls relies on various fourth amendment cases distinguishing an arrest from an investigatory stop and claims that A.R.S. § 12–820.02(1) should be interpreted literally to apply only to a claim stemming from a public employee's failure to make an arrest. *See State v. Lawson,* 144 Ariz. 547, 550–53, 698 P.2d 1266, 1269–72 (1985) (court discusses and applies different levels required to warrant proper investigatory stop and arrest).

■■■ Statutory interpretation is an issue of law, and this court is entitled to draw its own legal conclusions. *U.S. Parking Systems v. City of Phoenix,* 160 Ariz. 210, 211, 772 P.2d 33, 34 (App.1989). Unambiguous statutes should be given their plain meaning unless an absurdity results. *Id.* In interpreting a statute, "legislative intent is controlling" and "pragmatic construction is required if a technical construction would lead to absurdity." *State v. Weible,* 142 Ariz. 113, 118, 688 P.2d 1005, 1010 (1984). "To arrive at legislative intent, the court looks to the words, context, subject matter, effects and consequences, reason and spirit of the law." *State v. Schoner,* 121 Ariz. 528, 530, 591 P.2d 1305, 1307 (App.1979).

The historical note following A.R.S. § 12–820 describes the legislative purpose and intent behind Arizona's sovereign immunity statutes, including A.R.S. § 12–820.02. That historical note states:

Section 1. Legislative purpose and intent

A. The legislature recognizes the inherently unfair and inequitable results which occur in the strict application of the traditional doctrine of sovereign immunity. On the other hand, the legislature recognizes that, while a private entrepreneur may readily be held liable for negligence within the chosen scope of his activity, the area within which government has the power to act for the public good is almost without limit and therefore government should not have the duty to do everything that might be done. Consequently, it is hereby declared to be the public policy of this state that public entities are liable for acts and omissions of employees in accordance with the statutes and common law of this state. All of the provisions of this act should be construed with a view to carry out the above legislative purpose.

Although it is clear from the above statement that the legislature intended to limit sovereign immunity to certain specific, enumerated circumstances, it is also clear that the legislature recognized that sovereign immunity is sometimes necessary given the breadth of the government's exercise of power. One specific instance of immunity is the immunity for negligence in the failure to make an arrest. A.R.S. § 12–820.-02(1).

As mentioned earlier, Walls' position is that Officer Singleton was negligent in failing to make an investigatory stop of Espinoza sooner than he did, not in failing to arrest Espinoza. However, Singleton's decision to make an investigatory stop of the Espinoza vehicle was merely the first step in arresting Espinoza. Until he made the stop, Singleton could not have known whether he had probable cause to arrest Espinoza. Because the purpose of an investigatory stop is for an officer to determine whether a crime has been committed as well as whether the person stopped is, or is about to be, engaged in criminal activity, *see Lawson,* 144 Ariz. at 552, 698 P.2d at 1271, an investigatory stop will often lead to an arrest.

Although we recognize that in the criminal law context the distinction between an investigatory stop and an arrest may be critical, a distinction should not be made between the two activities for the purpose of determining the applicability of the qualified immunity provided by A.R.S. § 12–820.02(1). The two activities are similar in that both an investigatory stop and an arrest involve a judgment by a police officer and subsequent apprehension and/or detention of a suspect. Walls argues that qualified immunity should apply only when the officer has probable cause to arrest someone, but fails to make an arrest. Further, he argues that qualified immunity should

not apply when the officer merely has a reasonable suspicion that a crime may have been or is about to be committed, but fails to make an investigatory stop. This distinction would result in an absurdity, and we will not interpret the statute in that way. As the supreme court stated in *Garrison v. Luke*, 52 Ariz. 50, 56, 78 P.2d 1120, 1122 (1938):

> If, however, a literal application of the language [of a statute] leads to a result which produces an absurdity, it is our duty to construe the act, if possible, so that it is a reasonable and workable law, not inconsistent with the general policy of the legislature, even though in so doing we may be compelled to change the punctuation or even the precise language of the act. [citations omitted].

We therefore interpret the phrase "failure to make an arrest" in A.R.S. § 12-820.02(1) to include "failure to make an investigatory stop which may or may not lead to an arrest." Given this interpretation, Officer Singleton and DPS cannot be liable for ordinary negligence, much less gross negligence, for Singleton's failure to make an investigatory stop of Espinoza prior to the time the Espinoza vehicle collided with the Walls vehicle. However, Walls further argues that, even if the qualified immunity of A.R.S. § 12-820.02(1) applies in this case, the trial court improperly granted summary judgment in favor of Officer Singleton and DPS because there was a fact question as to whether Singleton was grossly negligent.

■ Ordinarily, the issue of gross negligence is a question of fact to be decided by the jury. *Southern Pac. Transp. Co. v. Lueck*, 111 Ariz. 560, 563, 535 P.2d 599, 602 (1975), *cert. denied*, 425 U.S. 913, 96 S.Ct. 1510, 47 L.Ed.2d 763 (1976). In order to present such an issue to the jury, gross negligence need not be established conclusively, but the evidence on the issue must be more than slight and may not border on

conjecture. *DeElena v. Southern Pacific Company*, 121 Ariz. 563, 569, 592 P.2d 759, 765 (1979). A court may withdraw the issue of gross negligence from the jury only when no evidence is introduced that would lead a reasonable person to find gross negligence. *See Smith v. Chapman*, 115 Ariz. 211, 214, 564 P.2d 900, 903 (1977) (court erred in directing verdict on punitive damage issue where there was sufficient evidence from which jury could have found defendant grossly negligent). Recognizing these rules, we hold that the trial court here properly granted summary judgment in favor of DPS and Singleton.

■ A party is grossly or wantonly negligent if he acts or fails to act when he knows or has reason to know facts which would lead a reasonable person to realize that his conduct not only creates an unreasonable risk of bodily harm to others but also involves a high probability that substantial harm will result. *Nichols v. Baker*, 101 Ariz. 151, 153, 416 P.2d 584, 586 (1966). Gross negligence differs from ordinary negligence in quality and not degree. *Kemp v. Pinal County*, 13 Ariz.App. 121, 124, 474 P.2d 840, 843 (1970). Our supreme court described gross or wanton negligence in *Scott v. Scott*, 75 Ariz. 116, 122, 252 P.2d 571, 575 (1953) as follows:

> Wanton negligence is highly potent, and when it is present it fairly proclaims itself in no uncertain terms. It is "in the air," so to speak. It is flagrant and evinces a lawless and destructive spirit.

■ In their motion for summary judgment, DPS and Officer Singleton argued that there were no facts from which a jury could reasonably find that Singleton had been negligent, much less grossly negligent. The only controverting evidence submitted by Walls was the Todd affidavit.[3] As discussed earlier, that affidavit stated that Singleton told Todd that for some period of time he had intended to stop

---

3. DPS and Singleton claim that Richard Todd's affidavit is incompetent because it is based upon hearsay rather than upon personal knowledge as required by Rule 56(e), Arizona Rules of Civil Procedure. However, Singleton's statements to Todd would constitute an admission by a party-

opponent and not hearsay. Ariz.R.Evid. 801(d)(2). An admission is admissible regardless of its reliability. *Leone v. Precision Plumbing and Heating of So. Ariz.*, 121 Ariz. 514, 516-17, 591 P.2d 1002, 1004-05 (App.1979).

the Espinoza vehicle, but, because barricades in the area restricted traffic, he felt that allowing Espinoza to continue until he could safely stop him was the more appropriate approach to take. Todd's affidavit differed somewhat from Singleton's affidavit. In his affidavit, Singleton stated that after he concluded that he had probable cause to make the stop, he moved to activate his lights and to make the stop, but the collision occurred instantaneously.

Because summary judgment was granted in favor of DPS and Officer Singleton, we must view the facts in a light most favorable to Walls. *See Gulf Ins. Co. v. Grisham,* 126 Ariz. 123, 124, 613 P.2d 283, 284 (1980). However, even assuming that the Todd affidavit is true, we agree with DPS and Singleton that this evidence is not sufficient to create a jury question about Singleton's gross negligence. Walls provided no evidence about how much time elapsed between the time Singleton concluded he had cause to make the investigatory stop and the time of the collision or about whether Singleton could have effected the stop before the collision. In addition, contrary to Walls' brief, there is nothing in the record to indicate that Singleton ever admitted that he had time to stop Espinoza prior to the collision. Therefore, Walls presented no evidence from which the jury could have inferred that Officer Singleton was grossly negligent in waiting such a long period of time to stop Espinoza after he concluded he had probable cause to make an investigatory stop. We also note that Officer Singleton's concerns for safety, as described in the Todd affidavit, illuminate the fact that Singleton was not acting with the "lawless and destructive spir-

it" described by the court in *Scott,* 75 Ariz. at 122, 252 P.2d at 575.

■ Summary judgment is appropriate when "the facts produced in support of the claim or defense have so little probative value ... that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme School v. Reeves,* 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990). Because the Todd affidavit was insufficient to create a jury question on the issue of Officer Singleton's gross negligence, the trial court did not err in granting summary judgment in favor of DPS and Singleton.[4] *Cf. Kemp v. Pinal County,* 13 Ariz.App. 121, 474 P.2d 840 (1970) (court did not err in refusing to give gross negligence instruction where there was no evidence that defendant's conduct constituted gross negligence).

## III. DENIAL OF LEAVE TO AMEND COMPLAINT

Following appellees' motion for summary judgment, Walls moved to amend the complaint to add a gross negligence count against DPS and Officer Singleton. The trial court denied this motion, and Walls claimed that this denial was error.[5]

■ As a preliminary matter, DPS and Officer Singleton contend that the denial of a motion to amend a complaint is not an appealable order and that the appropriate remedy for challenging such a denial is to seek a special action. *See Dollar A Day Rent A Car Systems, Inc. v. Superior Ct.,* 107 Ariz. 87, 89, 482 P.2d 454, 456 (1971). Although this contention is true when such a challenge is made prior to the time a final

4. Walls also claims that summary judgment on the gross negligence issue was inappropriate because there was an issue of fact as to whether Espinoza was "drifting" or "weaving" prior to Singleton's determination that he had cause to make an investigatory stop. In his affidavit, Singleton stated that Espinoza was drifting toward the right lane, while he stated in the police report and allegedly told Todd that Espinoza was weaving. However, this dispute is not material to the issue of whether Singleton was grossly negligent because it was undisputed that Singleton immediately determined he had probable cause to make an investigatory stop. Further, Walls' allegations of gross negligence relat-

ed to Singleton's waiting too long to stop Espinoza after he had concluded he had the right to make the stop.

5. Although the trial court did not state its reasons for denying Walls' motion to amend, we assume that futility of the amendment was the reason because the trial court considered the merits of the gross negligence issue in the context of the motion for summary judgment filed by DPS and Singleton. *See Consumers Petroleum Co. v. Texaco, Inc.,* 804 F.2d 907, 913 (6th Cir.1986).

judgment has been entered, the denial of a motion to amend may be appealable when, as in the case at bar, final judgment has been entered. *See* A.R.S. § 12–2101(B); *Spitz v. Bache & Co., Inc.*, 122 Ariz. 530, 596 P.2d 365 (1979) (reversing the trial court's order denying plaintiff's motion for leave to amend complaint and granting defendant's motion for summary judgment).

Rule 15(a), Arizona Rules of Civil Procedure, provides in part that a pleading may be amended once as a matter of course before any responsive pleading is served; otherwise, a party may amend only by leave of court. Although leave to amend is discretionary, the Arizona Supreme Court has stated that amendments will be liberally allowed. *Owen v. Superior Ct.*, 133 Ariz. 75, 79, 649 P.2d 278, 282 (1982). Denial of leave to amend is generally considered an abuse of discretion where the amendment merely seeks to add a new legal theory supported by factual issues already in the case. *See, e.g., Cagle v. Carr*, 101 Ariz. 225, 226–27, 418 P.2d 381, 382–83 (1966). The standard for determining whether leave to amend should be granted was set forth in *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), as follows:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the party of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.—the leave sought should, as the rules require, be "freely given."

Walls claims that the trial court's denial of his motion to amend the complaint was an abuse of discretion because he was simply seeking to add a new legal theory which was supported by the factual issues in the case. DPS and Officer Singleton, however, argue that the denial of leave to amend was proper here because the amend-

ment requested by Walls was futile. We agree.

In the instant case, the trial court considered Walls' motion to amend together with the motion for summary judgment filed by DPS and Officer Singleton. DPS and Singleton argued in their motion that there were no facts supporting a finding of either negligence *or gross negligence* on the part of either DPS or Singleton. In defending against the motion for summary judgment, Walls argued that there were sufficient facts to present the issue of gross negligence to the jury. In other words, both parties in essence treated the gross negligence issue as if it were already alleged in the complaint. Therefore, in deciding the summary judgment motion, the trial court was given the opportunity to consider the merits of Walls' gross negligence claim and concluded that there was not sufficient evidence to go to the jury on that issue.

As discussed earlier, we affirm the trial court's grant of summary judgment in favor of DPS and Officer Singleton on the grounds that the qualified immunity of A.R.S. § 12–820.02(1) applies to Singleton's actions and Walls presented no evidence from which a reasonable juror could find that either DPS or Singleton was grossly negligent. Because Walls' proof on gross negligence did not survive appellees' summary judgment motion, an amendment adding a gross negligence claim in the complaint would have been futile. On this same issue, the court in *Eria v. Texas Eastern Transmission Corp.*, 377 F.Supp. 344, 345 (E.D.N.Y.1974), stated as follows: "While it is true that leave to amend a pleading is usually freely given, ... if the amended pleading could be defeated by a motion for summary judgment, [the court's] grant[ing] [of] leave to amend would be a futile gesture." Therefore, the trial court did not abuse its discretion in denying Walls' leave to amend his complaint.

## IV. CONCLUSION

We affirm the trial court's decision to grant summary judgment in favor of DPS

and Officer Singleton. DPS and Officer Singleton are entitled to the qualified immunity provided in A.R.S. § 12–820.02(1), and Walls submitted insufficient evidence to present the jury with the issue of Singleton's gross negligence. We additionally affirm the trial court's denial of Walls' motion to amend the complaint to add a gross negligence count against DPS and Singleton on the grounds that such an amendment would have been futile.

KLEINSCHMIDT, and MELVYN T. SHELLEY, Retired, JJ., concur.

NOTE: The Honorable Melvyn T. Shelley, Retired, was authorized to participate in this appeal by the Chief Justice of the Arizona Supreme Court pursuant to Ariz. Const. art. 6, § 20 and A.R.S. § 38–813.