IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| SYLVIA ARMENTA, for herself and on behalf of her minor son, JOSEPH ARIAS, | ) ) ) | |
| Plaintiff/Appellant, | ) ) | 2 CA-CV 2000-0138 DEPARTMENT A |
| v. | ) ) | O P I N I O N |
| CITY OF CASA GRANDE, a governmental entity, | ) ) ) | |
| Defendant/Appellee. | ) ) ) | |

APPEAL FROM THE SUPERIOR COURT OF PINAL COUNTY

Cause No. CV99046853

Honorable William J. O'Neil, Judge

AFFIRMED

---

Goldberg & Osborne
  By Joel T. Ireland
                                                                      Tucson
                                          Attorneys for Plaintiff/Appellant


Jones, Skelton & Hochuli, P.L.C.
  By Mark D. Zukowski and David C. Lewis
                                                                    Phoenix
                                        Attorneys for Defendant/Appellee

---

B R A M M E R, Presiding Judge.

¶1        On her own behalf and that of her minor son, Joseph Arias, Sylvia Armenta appeals

from the trial court's entry of summary judgment in favor of the City of Casa Grande on her

personal injury lawsuit against the City seeking damages for injuries Joseph suffered while playing

in one of the City's parks.  Armenta first argues that the recreational use immunity statute, A.R.S.

§ 33-1551, upon which the City relied in moving for summary judgment and upon which the trial court presumably based its decision, either does not apply to this case or is unconstitutional as applied and, thus, does not bar the cause of action for negligence. Alternatively, Armenta argues that, even if the statute is constitutional and applies to this case, genuine issues of material fact preclude summary judgment against her on the causes of action based on attractive nuisance and gross negligence, two exceptions to the immunity granted by the statute. We conclude that the statute applies to this case and that it is constitutional as applied. We also find that no genuine issues of material fact precluded the trial court from granting summary judgment in the City's favor on the attractive nuisance and gross negligence theories of liability.

### Facts and Procedural History

¶2 We view the evidence and all reasonable inferences therefrom in the light most favorable to Armenta, the party opposing summary judgment. *See Hill-Shafer Partnership v. Chilson Family Trust*, 165 Ariz. 469, 799 P.2d 810 (1990). In May 1998, Joseph, then fourteen years old, rode with his friend Brian on their bicycles to the City's Dave White Regional Park. Brian's mother, Beatrice, and other relatives were already at the park at a gathering.

¶3 At Brian's suggestion, Joseph rode his bicycle under a soccer goal on a field at the park trying to touch the goal's top crossbar and "see how tall it was." As he rode under the crossbar, Joseph stood on the bicycle pedals and reached his hands up to touch the bar. He was planning to hit the crossbar with both hands and then quickly reach back down to grab the handlebars. As he was preparing to do so, however, the bicycle hit something and "was jerked out from underneath" him, causing him to hit the crossbar "real hard" with both hands as he "was falling back." The crossbar broke and both he and the bar fell to the ground. Joseph suffered severe injuries to his right arm and hand when he was pinned beneath the bar.

**¶4**     His mother sued the City on Joseph's behalf, alleging that it was responsible for his injuries under negligence, attractive nuisance, and gross negligence theories of liability. The City subsequently moved for summary judgment, claiming that it was entitled to qualified immunity from liability under the recreational use immunity statute. Stating merely that there were "no issues of fact" precluding summary judgment, and without addressing the constitutionality of the statute, the court granted the City's motion. This appeal followed.

### Standard of Review

**¶5**     Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(c), 16 A.R.S., Pt. 2. Summary judgment should be granted "if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme School v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990). We determine de novo whether any genuine issues of material fact exist and whether the trial court erred in applying the law. *Bothell v. Two Point Acres, Inc.*, 192 Ariz. 313, 965 P.2d 47 (App. 1998). We also review de novo whether the recreational use immunity statute applies to this case and, if so, whether it is constitutional. *Herman v. City of Tucson*, 197 Ariz. 430, 4 P.3d 973 (App. 1999). Because the statute appears to limit common-law liability, "we must construe it strictly to avoid any overbroad statutory interpretation that would give unintended immunity and take away a right of action." *Smith v. Arizona Bd. of Regents*, 195 Ariz. 214, ¶9, 986 P.2d 247, ¶9 (App. 1999); *see also Doe ex rel. Doe v. State*, 200 Ariz. 174, 24 P.3d 1269 (2001); *Herman*.

**Discussion**

¶6        The recreational use immunity statute provides, in pertinent part, as follows:

> A.    A public or private owner . . . of premises is not liable to a recreational or educational user except upon a showing that the owner . . . was guilty of wilful, malicious or grossly negligent conduct which was a direct cause of the injury to the recreational or educational user.
>
> B.    This section does not limit the liability which otherwise exists for maintaining an attractive nuisance . . . .
>
> C.    As used in this section:
>
> . . . .
>
> 2.    "Grossly negligent" means a knowing or reckless indifference to the health and safety of others.
>
> 3.    "Premises" means agricultural, range, open space, park, . . . and any other similar lands, wherever located, which are available to a recreational or educational user, including, but not limited to, . . . any building, improvement, fixture, . . . or structure on such lands.

§ 33-1551.

**a.  Applicability of recreational use immunity statute**

¶7        Because we need not address Armenta's challenge to the constitutionality of the statute if we determine that it is inapplicable, *see Herman*, we first address her argument, based on *Smith*, that the statute does not apply because the goal that injured Joseph is a type of apparatus that is excluded from the statutory definition of "premises." In *Smith*, Division One of this court held that the definition did not encompass a "jumping apparatus consisting of a combination of a trampoline and bungee cord" temporarily placed on a college campus during a carnival-like event. 195 Ariz. 214, ¶3, 986 P.2d 247, ¶3. The court stated that the legislature's intent in enacting the statute "appears to be to encourage accessibility and use of outdoor, open spaces for recreation"

4

and that the types of structures the statute encompasses seem to "have some relation to the usual use of the property." *Id*. at ¶17.

¶8      But the nature of the injury-causing object in *Smith* and the circumstances surrounding that object's presence were different from those here. The trampoline-type apparatus in *Smith* had been on the campus for a specific, short-term event, whereas the goals here had been on the soccer field "most of the time" in the years before Joseph's injury, although the City moved them off the field occasionally to clear the area for a public event. In *Miller v. City of Dayton*, 537 N.E.2d 1294 (Ohio 1989), the Ohio Supreme Court considered whether a similar recreational use immunity statute applied to a municipal park softball field where the plaintiff injured himself when he slid into a base. We find that decision instructive and agree with the court's reasoning that the critical issue is whether improvements to recreational premises such as a softball field, which there included human-made structures such as bases and fences, "change the character of the premises and[, thus,] put the property outside the protection" of the statute. *Id*. at 1296. Concluding that the "essential character" of the premises remained recreational when a softball tournament was played in its park, the Ohio court concluded that the city was immune from liability under the statute. *Id*.

¶9      Section 33-1551(C)(3) specifically includes parks in its definition of premises. Adopting the reasoning of *Miller*, we conclude that installing soccer fields, including goals, in a park does not change the park's recreational character. Moreover, our conclusion is consistent with the express language of the statute, which includes "fixture[s]" and "structure[s]" on the specified lands in defining "premises" and which defines "recreational user" as one who "enter[s] upon premises to . . . ride, exercise, . . . or engage in similar pursuits." § 33-1551(C)(3) and (4). Finally, unlike the trampoline-type apparatus in *Smith*, soccer goals are the type of apparatus one

would expect to find on a park field, and are directly related to a typical use of the property. Accordingly, the statute applies to this case.

**b. Constitutionality of the recreational use immunity statute**

¶10        We need not address Armenta's next argument, that the statute unconstitutionally abrogates the right to pursue a general negligence claim in violation of article XVIII, § 6 of the Arizona Constitution, the anti-abrogation clause. Our supreme court has just rejected a similar argument. *Dickey v. City of Flagstaff*, No. CV-99-0273-PR, 2003 WL 1793372 (Ariz. Apr. 7, 2003).

¶11        We next address Armenta's arguments that, even if the statute is constitutional and applies to Joseph, genuine issues of material fact preclude summary judgment on the causes of action for attractive nuisance and gross negligence, two exceptions in the statute.

**c. Attractive nuisance**

¶12        Section 33-1551(B) provides that the statute "does not limit the liability which otherwise exists for maintaining an attractive nuisance." Armenta argues that the soccer goal that injured Joseph was an attractive nuisance. The City contends the doctrine does not apply here, insisting that Armenta did not establish sufficient facts on the requisite elements of the doctrine to withstand its motion for summary judgment. The City further contends that, even assuming Armenta can prove the elements, the doctrine is inapplicable because of what it characterizes as "a more fundamental policy reason[:] . . . the presence of an adult supervisor [Beatrice] at the park."

¶13        Under the attractive nuisance doctrine, a possessor of land is, under certain circumstances, "subject to liability for physical harm to children trespassing thereon caused by an

6

artificial condition upon the land." Restatement (Second) of Torts § 339 (1965). Those circumstances include the following:

> (a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

> (b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

> (c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

> (d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

> (e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

*Id.*

¶14 Arizona adopted the predecessor to Restatement § 339 in *Buckeye Irrigation Co. v. Askren*, 45 Ariz. 566, 46 P.2d 1068 (1935). *See also Spur Feeding Co. v. Fernandez*, 106 Ariz. 143, 472 P.2d 12 (1970). The doctrine initially was limited to those cases in which a child was attracted to the place of injury by the same condition that ultimately injured him or her. *See, e.g., Lee v. Salt River Valley Water Users' Ass'n*, 73 Ariz. 122, 238 P.2d 945 (1951). That requirement, however, has since been abandoned. *Brown v. Arizona Pub. Serv. Co.*, 164 Ariz. 4, 790 P.2d 290 (App. 1990). In the most recent case in which our supreme court applied the doctrine, *Barnhizer v. Paradise Valley Unified Sch. Dist. #69*, 123 Ariz. 253, 599 P.2d 209 (1979), the court confined its analysis to determining whether the conditions of Restatement § 339 had been met. Accordingly, we analyze whether Armenta presented sufficient evidence to create

7

a material issue of fact on whether the doctrine may apply under present requirements. If we determine, however, that Armenta has failed as a matter of law to raise a genuine issue of fact as to any one of the conditions set forth in Restatement § 339, then summary judgment for the City was appropriate. *See Barnhizer*.

¶15 The key inquiries here are (1) whether the City knew or should have known about the condition of the soccer goal and (2) whether the City realized or should have realized that it posed an unreasonable risk of death or serious bodily injury to children. The record contains insufficient evidence to support Armenta's contention that she established this second element.

¶16 Armenta attached to her response to the City's motion for summary judgment a transcript of the deposition testimony of Ron Wood, the City's park superintendent, and Jerry Sullivan, the City's parks and recreations director. Wood testified that the City had moved the goals from a school to the park at the request of a soccer league. The City modified the crossbars of the goals by lengthening them. Wood stated that, in late 1995 or 1996, two to three years before Joseph's accident, Wood had modified the crossbars in the City's workshop by welding together pieces of galvanized pipe he had found in the shop to make each crossbar a total length of twenty-four feet and later installed the modified goals on the field. Wood said he did not know if the goals were regularly inspected and agreed that the City's inspection reports did not indicate whether they had ever been inspected. He also testified that the goals were occasionally removed from the park and were not on the field year-round, stating that the last time the City had moved the goals, "everything seemed to be solid." He also testified that he had not heard any reports or complaints from his employees or the public about any problems with the goals. Wood further testified that, after the accident, when he had looked at the crossbar that had fallen on Joseph, he had seen that it was broken "at the weld that [he] did." Wood agreed that, if the crossbar had

been properly welded, he would not have expected the weld to fail "[u]nder the condition of one kid hanging on it."

¶17 Sullivan testified that the goal was treated "just like any other apparatus or park equipment" that a city employee was responsible for regularly inspecting. Sullivan agreed that the City takes safety precautions because it knows and anticipates that "kids do not always . . . use equipment the way it's intended to be used." He acknowledged he was aware that "kids are going to be climbing" on equipment on the premises, because "kids climb everywhere," and that the City tries "to have the equipment in such shape that it's not a danger to kids who use it in an unanticipated way." He also conceded that the goals are the type of park equipment on which children are expected to climb. He stated, however, that he had never seen anyone hang from the top crossbar of the goals, nor had he ever heard a report of anyone doing so. In summary, Sullivan testified that the City was responsible for regularly inspecting and maintaining equipment like the soccer goals in its parks.

¶18 It can reasonably be inferred from Wood's testimony that the City did not regularly inspect the goals' crossbars after he modified them. But Armenta presented no evidence that, even if the goals had been regularly inspected, the problem with the welded crossbar would have been found. *Cf. State v. Juengel*, 15 Ariz. App. 495, 489 P.2d 869 (1971) (plaintiff presented expert testimony that trained maintenance crews would have realized danger posed by unstable rock formation that injured plaintiff). Accordingly, Armenta did not present sufficient evidence to create a material issue of fact on whether the City knew or should have known, even by regular inspections, about the goal's allegedly defective condition and, thus, knew or should have known that the goal posed an unreasonable risk of death or serious bodily injury to children in the park.

9

**¶19** Because we have found that, as a matter of law, Armenta failed to establish one of the conditions necessary for application of the doctrine, we need not address the City's alternative arguments that Armenta was too old to have the attractive nuisance doctrine apply, or that Beatrice's presence at the park rendered the doctrine inapplicable. *Barnhizer*. The City was therefore entitled to summary judgment in its favor on the cause of action for attractive nuisance.

### d. Gross negligence

**¶20** Armenta nonetheless contends the recreational use immunity statute does not apply because she presented sufficient evidence to withstand summary judgment that Joseph's injury was caused by the City's gross negligence in maintaining the goal. The statute excepts such negligence, which is defined as "a knowing or reckless indifference to the health and safety of others." § 33-1551(A) and (C)(2). The definition comports with that announced by Division One of this court in *Williams v. Thude*, 180 Ariz. 531, 539, 885 P.2d 1096, 1104 (App. 1994), *aff'd*, 188 Ariz. 257, 934 P.2d 1349 (1997):

> Gross, willful, or wanton conduct is action or inaction with reckless indifference to the result or the rights or safety of others. A person is recklessly indifferent if he or she knows, or a reasonable person in his or her position ought to know: (1) that his action or inaction creates an unreasonable risk of harm; and (2) the risk is so great that it is highly probable that harm will result.

*See also Walls v. Arizona Dep't of Pub. Safety*, 170 Ariz. 591, 826 P.2d 1217 (App. 1991).

**¶21** Gross negligence is generally a question of fact that is determined by a jury. *Badia v. City of Casa Grande*, 195 Ariz. 349, 988 P.2d 134 (App. 1999). We may resolve this issue as a matter of law, however, if the plaintiff fails to produce evidence that is "more than slight and [that does] not border on conjecture" such that a reasonable trier of fact could find gross negligence. *Walls*, 170 Ariz. at 595, 826 P.2d at 1221; *see also Badia; Kemp v. Pinal Co.*, 13 Ariz. App. 121, 474 P.2d 840 (1970). By granting the City's motion for summary judgment, the

10

trial court implicitly concluded that Armenta had failed to present the required quantum of evidence that the City's conduct was grossly negligent. We agree.

¶22 Armenta relies primarily on the fact that, when Sullivan was asked during his deposition whether "[i]t would be a pretty gross breach of your duties to not make the parks safe," he responded, "Yes." But, such "conjectural and conclusory" testimony is, without more, insufficient to "render a plaintiff's allegations of gross negligence triable issues of fact." *Badia*, 195 Ariz. 349, ¶30, 988 P.2d 134, ¶30. In apparent recognition of this, Armenta also points to additional testimony, which we have previously described in ¶¶16 and 17, that she contends creates an issue of material fact on this theory of liability.

¶23 Even viewing these facts in the light most favorable to Armenta, *see Hill-Shafer*, on the record before us, we conclude that she did not present sufficient evidence to withstand summary judgment on the cause of action for gross negligence. Although Sullivan testified that he could anticipate that children might climb on the goals, he had never seen anyone do so, nor had he heard a report of anyone doing so, much less a report of previous injuries sustained by a child engaging in that activity. As stated above in ¶18, there was no evidence that the City knew or should have known the weld was deficient because there was no testimony that regular inspections, had they occurred, would necessarily have revealed a problem. Accordingly, Armenta failed to present evidence that the City's actions would have led it to realize that its conduct "not only create[d] an unreasonable risk of bodily harm to others but also involve[d] a high probability that substantial harm [would] result." *Walls*, 170 Ariz. at 595, 826 P.2d at 1221; *see also Williams*. Because no reasonable trier of fact could find that the City acted with gross negligence, the trial court's grant of summary judgment in the City's favor on the gross negligence cause of action was proper. *See Badia; Walls*.

11

**Conclusion**

¶24     We conclude that the recreational use immunity statute applies to this case and is constitutional as applied.  We therefore affirm the trial court's entry of summary judgment for the City on Armenta's cause of action for negligence.  We further conclude that Armenta failed to raise material issues of fact to preclude summary judgment on the attractive nuisance and gross negligence causes of action and affirm the entry of summary judgment in favor of the City on those theories as well.  Because Armenta did not prevail on appeal, and because her reliance on A.R.S. § 12-341.01 is misplaced, her request for an award of attorney's fees on appeal is denied.


_____
                            J. WILLIAM BRAMMER, JR., Presiding Judge

CONCURRING:


_____
JOHN PELANDER, Judge



_____
WILLIAM E. DRUKE, Judge (Retired)