NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

CHRISTINE KILRAIN, individually and on behalf of the estate of DUFFY
LEE KILRAIN, *Plaintiff/Appellant*,

*v.*

STATE OF ARIZONA; THOMAS RICHARDSON, correctional officer
ASPC-Eyman facility; CHARLES MOREHEAD, correctional officer,
ASPC-Eyman facility, *Defendants/Appellees*.

No. 1 CA-CV 13-0447
FILED 10-07-2014

---

Appeal from the Superior Court in Maricopa County
No.  CV2009-022457
The Honorable John Christian Rea, Judge

**AFFIRMED**

---

COUNSEL

Law Office of Gary Lassen, PLC, Mesa
By Gary L. Lassen
*Counsel for Plaintiff/Appellant*

Arizona Attorney General's Office, Phoenix
By Michael E. Gottfried
*Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

Judge Andrew W. Gould delivered the decision of the Court, in which Presiding Judge Margaret H. Downie and Judge Samuel A. Thumma joined.

---

**G O U L D**, Judge:

**¶1** Christine Kilrain ("Plaintiff") appeals from the court's grant of summary judgment in favor of the State of Arizona, Thomas Richardson, and Charles Morehead ("Defendants"). For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

**¶2** On October 20, 2008, Arizona Department of Corrections ("ADOC") Officers Richardson and Morehead were assigned to adjoining dayrooms in Housing Unit 8 of Meadows Unit, a general population yard, at the Arizona State Prison Complex-Eyman. During their shift, Richardson asked Morehead if he would watch his section of the housing unit so Richardson could get a haircut from the yard barber. Morehead agreed. During Richardson's absence, which lasted approximately 30 minutes, Morehead conducted both his and Richardson's security checks for both housing units. After doing so, Morehead left the housing unit and went to the adjoining control room to check an inmate's visitation request. While Morehead was in the control room, Duffy Kilrain ('Kilrain") was assaulted. Kilrain later died of his injuries.

**¶3** Acting individually and on behalf of Kilrain's estate, Plaintiff, Kilrain's surviving spouse, sued Richardson, Morehead, ADOC, the State of Arizona, and a number of other defendants who are no longer parties to this lawsuit. The complaint sought damages for negligence, gross-negligence, civil rights violations under 42 United States Code ("U.S.C.") § 1983, and loss of consortium. Plaintiff's negligence and loss of consortium claims were later dismissed.

**¶4** The parties eventually filed cross-motions for summary judgment. The court found Plaintiff had proffered no admissible evidence to support her claims or controvert Defendants' evidence and, accordingly, granted Defendants' motion for summary judgment. After

the court signed a judgment dismissing Plaintiff's case, Plaintiff filed a motion for new trial. The court denied Plaintiff's motion for new trial, and she timely appealed.

## DISCUSSION

### I. Standard of Review

¶5     A court "shall grant summary judgment if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). On appeal from a grant of summary judgment, we review the court's determination de novo. *Badia v. City of Casa Grande*, 195 Ariz. 349, 351, ¶ 11, 988 P.2d 134, 137 (App. 1999). "Because summary judgment was granted in favor of [Defendants], we must view the facts in the light most favorable to [Plaintiff]." *Walls v. Ariz. Dep't of Pub. Safety*, 170 Ariz. 591, 596, 826 P.2d 1217, 1222 (App. 1991).

### II. Gross Negligence

¶6     A public entity or a public employee is not subject to liability for an "injury caused by a prisoner to any other prisoner" absent a showing of gross negligence. Ariz. Rev. Stat. ("A.R.S.") § 12-820.02(A)(4) (2014). "Whether gross negligence exists is generally a fact question for the jury, but it may be resolved on summary judgment if 'no evidence is introduced that would lead a reasonable person to find gross negligence.'" *Badia*, 195 Ariz. at 356, ¶ 27, 988 P.2d at 141 (quoting *Walls*, 170 Ariz. at 595, 826 P.2d at 1221).

¶7     A party is grossly negligent "when he knows or has reason to know facts which would lead a reasonable person to realize that his conduct not only creates an unreasonable risk of bodily harm to others but also involves a high probability that substantial harm will result." *Walls*, 170 Ariz. at 595, 826 P.2d at 1221 (citations omitted). Gross negligence involves a risk of harm that is "substantially in excess of that necessary to make the conduct negligent." *Townsend v. Whatton*, 21 Ariz. App. 556, 560, 521 P.2d 1014, 1018 (1974). Thus, "[a] person can be very negligent and still not be guilty of gross negligence." *Kemp v. Pinal Cnty.*, 13 Ariz. App. 121, 124-25, 474 P.2d 840, 843-44 (1970).

¶8     Plaintiff alleges that ADOC violated its own polices by placing Kilrain, an inmate with prior convictions for sex offenses, in a general population yard, rather than placing him in a sex offender unit. The record does not support this allegation. ADOC's policy directs that

an inmate who is *currently* committed to ADOC for a sex offense must be placed in a sex offender unit. However, ADOC's policy also provides that an inmate currently committed for a non-sexual offense, despite the fact he has a prior conviction for a sex offense, is not restricted to placement in a sex offender unit. Here, although Kilrain had a prior conviction for sexual assault in 2004, he was not currently incarcerated for a sex offense; he was serving a sentence for domestic violence. As a result, Kilrain's placement in a general population yard complied with ADOC's policies.

¶9 Next, Plaintiff asserts that ADOC was grossly negligent in denying Kilrain's requests to be placed in protective segregation. The record shows that Kilrain asked to be placed in protective segregation following altercations with other inmates in February 2008 and April 2008. In one of his requests, Kilrain specifically asked to be placed in a sex offender unit.

¶10 The record does not show that ADOC was grossly negligent in denying Kilrain's requests, or that ADOC's denials violated any of its policies for protective segregation requests. Each time Kilrain requested protective segregation, ADOC evaluated his request and moved him to a different prison yard, with the inmates involved in relevant altercations being added to his "Do Not House With" list to avoid future problems. Moreover, in each instance, Kilrain waived his right to appeal ADOC's decision.

¶11 Finally, Plaintiff claims Defendants were grossly negligent in failing to provide adequate staffing and supervision during the approximately 30 minutes Richardson was absent from his post. The record shows that, in fact, it was not uncommon for ADOC officers to leave their posts for short periods of time to get a haircut from the staff barber or a shoe shine, if, as was the case here, there were two officers assigned to a single housing unit. Plaintiff notes that both Morehead and Richardson were disciplined for this conduct as a violation of ADOC regulations, and the shift supervisor was also disciplined for his failure to exercise proper supervision.

¶12 This evidence, however, does not establish gross negligence. It is undisputed that security checks were performed at the regular intervals during Richardson's absence from his post. Nothing in the record indicates that Richardson and Morehead were aware of Kilrain's prior convictions or that he might be a target of assault, and therefore needed to make sure they were both at their posts while Kilrain was assigned to their yard. In addition, Plaintiff made no showing that the

practice of one officer covering two posts resulted in security problems or assaults in the past, thereby causing Defendants to know or have reason to know that this practice created an unreasonable risk of bodily harm to inmates. *See Walls*, 170 Ariz. at 595, 826 P.2d at 1221.

¶13 In short, Defendants properly supported their motion for summary judgment with admissible evidence and, in response, Plaintiff did not properly dispute the evidentiary showing by Defendants. Nor did Plaintiff affirmatively offer any admissible evidence. We therefore conclude that Plaintiff has failed "to produce evidence that is 'more than slight and [that does] not border on conjecture' such that a reasonable trier of fact could find gross negligence." *Armenta v. City of Casa Grande*, 205 Ariz. 367, 373, ¶ 21, 71 P.3d 359, 365 (App. 2003) (quoting *Walls*, 170 Ariz. at 595, 826 P.2d at 1221).

III. Section 1983

¶14 "Section 1983 protects against the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'" *Ybarra v. Bastian*, 647 F.2d 891, 892 (9th Cir. 1981). Violation of state laws or ADOC policies does not, without more, establish § 1983 liability; "Section 1983 'is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred.'" *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Plaintiff must show that Richardson and Morehead, and/or the State acting "under color of state law or authority," deprived Kilrain of his constitutional rights. *Braillard v. Maricopa Cnty.*, 224 Ariz. 481, 489, ¶ 20, 232 P.3d 1263, 1271 (App. 2010).

A. Individual Liability under § 1983

¶15 A prison official is liable under § 1983 if his "deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment to the United States Constitution." *Flanders v. Maricopa Cnty.*, 203 Ariz. 368, 376, ¶ 50, 54 P.3d 837, 845 (App. 2002). To establish liability, plaintiffs must show "the incarceration is under conditions posing a substantial risk of serious harm" and the prison official "was both aware of facts from which one can infer that substantial risk of serious harm exists *and* in fact drew that inference." *Id.* at ¶ 51. "The Eighth Amendment imposes duties on prison officials to take reasonable measures to guarantee inmate safety," in particular "to protect inmates from violence at the hands of other prisoners." *Id.* at ¶ 50. "To be liable, prison officials need not have anticipated injury to a particular

victim; it is sufficient if they were aware of a risk to the safety of a particular class of inmates." *Braillard*, 224 Ariz. at 489-90, ¶ 20, 232 P.3d at 1271-72.

¶16 Plaintiff argues that Kilrain was subjected to a substantial risk of serious harm because he was housed in a general population unit despite his prior conviction for a sexual offense. The evidence does not support this claim. Although Kilrain requested protective segregation due to his history as a sexual offender, he was placed in the general population unit in accordance with ADOC policies, and he did not appeal the ultimate decision denying his request. Additionally, upon investigating Kilrain's requests for protective segregation, ADOC ensured that Kilrain would not be housed with those inmates who had engaged in altercations with him in the past by placing them on his "Do Not House With" list. Accordingly, Kilrain was not subjected to "incarceration under conditions posing a substantial risk of serious harm." *Flanders*, 203 Ariz. at 376, ¶ 51, 54 P.3d at 845.

¶17 Plaintiff also claims the practice of one officer covering two posts exposed Kilrain to a substantial risk of serious harm. For the officers to be individually liable for their conduct under § 1983, Plaintiff must show Richardson and Morehead were aware of a substantial risk to Kilrain. *See Flanders*, 203 Ariz. at 376, ¶ 51, 54 P.3d at 845. However, nothing in the record indicates that Richardson and Morehead were aware of Kilrain's prior convictions or that he might be a target of assault. Although it can be said that leaving one officer to cover two posts may, as a general matter, increase the risk of inmate injury, the record does not show that Defendants acted with deliberate indifference to this risk. There is no evidence showing that this practice led to an increase in assaults or incidents of violence involving inmates.

B. The State's Liability under § 1983

¶18 "[V]icarious liability is inapplicable to . . . § 1983 suits." *Braillard*, 224 Ariz. at 491, ¶ 27, 232 P.3d at 1273 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "A governmental entity is liable under § 1983 when implementation of its official policies or established customs inflicts the constitutional injury." *Id.* at 708 (Powell, J., concurring).

> Such an action may be maintained when "systemic and gross deficiencies in staffing, facilities, equipment, or procedures," or "the need for more or different training, [are] so obvious, and . . . so likely to result in the violation of constitutional rights, that the policymakers of the [county] can reasonably be said to have been deliberately indifferent to the need."

*Braillard*, 224 Ariz. at 492, ¶ 32, 232 P.3d at 1274 (citations omitted). This kind of deliberate indifference occurs when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Farmer v. Brennan*, 511 U.S. 825, 840-41 (1994).

¶19 Plaintiff has not produced evidence of the requisite deliberate indifference to establish ADOC's liability under § 1983. As discussed above, Kilrain was placed in a general population unit in accordance with standard policies of ADOC. *Supra* ¶ 8. The record does not contain evidence that this policy was deliberately indifferent to the constitutional rights of Kilrain or other inmates with prior convictions for a sex offense. Although it is unclear whether the practice of obtaining post coverage to get a haircut was approved by the ADOC, the record contains no evidence that ADOC was aware of a risk of harm resulting from this practice. On the contrary, the evidence shows that this practice had not resulted in security problems or assaults in the past, and that security checks were conducted at their required intervals even if an officer was absent.

## CONCLUSION

¶20        For the reasons discussed above, we affirm the court's grant of summary judgment to Defendants.



Ruth A. Willingham · Clerk of the Court
FILED: gsh